## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JACKSON TRAILS, LLC, a New Jersey
limited liability corporation,

                    Plaintiff,

          v.

TOWNSHIP OF JACKSON, a New Jersey
municipal corporation and body politic; and
the PLANNING BOARD OF THE
TOWNSHIP OF JACKSON, a municipal
agency.

                    Defendants.

Civ. No. 3:20-cv-01150

(Returnable 6/15/20)

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS COUNTS XIII, XIV

**STORZER & ASSOCIATES, P.C.**
Sieglinde K. Rath (#048131991)
Roman P. Storzer, *admitted pro hac vice*
9433 Common Brook Road
Suite 208
Owings Mills, Maryland 21117
rath@storzerlaw.com
Tel: 410.559.6325
Fax: 202.315.3996

**WILENTZ, GOLDMAN & SPITZER, P.A.**
Donna M. Jennings
(#0172B1995)
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095
djennings@wilentz.com
Tel: 732.855.6039

**HILL WALLACK LLP**
Thomas F. Carroll, III
(#022051983)
Keith Loughlin
(#019212004)
21 Roszel Road
P.O. Box 5226
Princeton, N.J. 08543
Tel: 609.734.6336

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ............................................................................................ 4

    JTL's Development ................................................................................................ 4

    The JTL Application and Board Denial ................................................................ 5

    The COAH Background ...................................................................................... 10

STANDARD OF REVIEW ........................................................................................ 12

ARGUMENT ............................................................................................................ 13

    I.     DEFENDANTS' FIRST POINT CONTAINS NO ARGUMENT ...................... 13

    II.    PLAINTIFF'S COMPLAINT CONTAINS SUFFICIENT ALLEGATIONS TO
           STATE CLAIMS WITH RESPECT TO COUNTS XIII AND XIV. ................... 14

    III.   DEFENDANTS' "POINT III," WHICH AGAIN ARGUES THAT PLAINTIFF'S
           STATE LAW CLAIMS SHOULD BE DISMISSED BECAUSE THEY WERE
           NOT PURSUED IN STATE COURT, SHOULD BE REJECTED. ...................... 17

           A.    Defendants' Exhaustion Arguments, Redux. ............................................. 17

           B.    Substantive Due Process. .......................................................................... 18

           C.    Ripeness. ................................................................................................... 19

           D.    Failure to State a Claim, Count XIII. ........................................................ 21

    IV.   RESOLUTION OF COUNT XIV DOES NOT INVOLVE A COMPLEX OR
           NOVEL ISSUE OF STATE LAW ...................................................................... 21

CONCLUSION ......................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*41 Maple Assocs. v. Common Council of City of Summit*, 276 N.J. Super. 613, 648 A.2d 732 (App. Div. 1994)......................................................................................................................... 20

*431 E Palisade Ave. Real Estate, LLC, v. City of Englewood*, No. 219CV14515BRMJAD, 2019 WL 5078865 (D.N.J. Oct. 10, 2019).................................................................................... 22

*A.S. v. Ocean Cty. Fire Acad.*, No. CV1911306MASDEA, 2020 WL 1516972 (D.N.J. Mar. 30, 2020) ........................................................................................................................................ 22

*Anastasio v. Planning Bd. Of Tp. of West Orange*, 209 *N.J. Super.*, 499 (App. Div. 1986), *certif. den.*, 107 N.J. 46 (1986)....................................................................................................... 15

*Armano v. Martin*, 157 F. Supp. 3d 392 (D.N.J. 2016), *aff'd,* 703 F. App'x 111 (3d Cir. 2017).. 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 12

*Bethlehem Enterprises, Inc. v. City of Oak Forest*, No. 06 C 1772, 2007 WL 9706478 (N.D. Ill. Jan. 25, 2007)............................................................................................................................ 25

*Bikur Cholim, Inc. v. Village of Suffern,* 664 F. Supp. 2d 267 (S.D.N.Y. 2009).......................... 20

*Bisbing v. New Jersey Firemen's Home*, No. CIV. 06-5304 (DRD), 2007 WL 87635 (D.N.J. Jan. 9, 2007) .......................................................................................................................... 29

*Borum v. Brentwood Vill., LLC*, 218 F. Supp. 3d 1 (D.D.C. 2016)............................................. 25

*Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343 (1988) .............................................................. 29

*Casser v. Twp. of Knowlton*, 441 N.J. Super. 353, 118 A.3d 1071 (App. Div. 2015)................. 20

*Cellular Tel. Co. v. Zoning Bd. of Adjustment of Borough of Harrington Park,* 90 F. Supp. 2d 557 (D.N.J. 2000).............................................................................................................. 24

*City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997) ........................ 24, 29

*Congregation Anshei Roosevelt v. Planning & Zoning Bd. of Borough of Roosevelt*, 338 F. App'x 214 (3d Cir. 2009)................................................................................................................... 19

*Congregation Kol Ami v. Abington Tp.*, 2004 WL 1837037 (E.D. Pa. Aug. 17, 2004) .............. 24

*Congregation Kollel, Inc. v. Twp. of Howell, N.J.*, No. CV 16-2457 (FLW), 2017 WL 637689 (D.N.J. Feb. 16, 2017)................................................................................................... 12

*Congregation Rabbinical Coll. of Tartikov, Inc.,* 138 F. Supp. 3d 352 (S.D.N.Y. 2015) ........... 13

*Dilaura v. Ann Arbor Charter Twp.*, 30 F. App'x 501 (6th Cir. 2002) ........................................ 14

*Dr. Gertrude A. Barber Ctr., Inc. v. Peters Twp.*, 273 F. Supp. 2d 643 (W.D. Pa. 2003)............ 25

*Dworjan v. United States*, No. CV132671MASTJB, 2014 WL 12600259 (D.N.J. Apr. 30, 2014) ............................................................................................................................................... 13

*Eagle Cove Camp & Conference Center v. Town of Woodboro*, Civ. No. 10-00118 (W.D. Wis. Mar. 24, 2011) ................................................................................................................. 14

*Fair Hous. Council of San Diego v. Penasquitos Casablanca Owner's Ass'n,* No. 05CV0072-LAB RBB, 2005 WL 7146037 (S.D. Cal. July 5, 2005) ....................................................... 25

*Fallone Props., LLC v. Bethlehem Twp. Planning Bd.*, 369 N.J. Super. 552, 849 A.2d 1117 (App. Div. 2004) ................................................................................................................... 15

*Fralin v. Cty. of Bucks*, 296 F. Supp. 2d 609 (E.D. Pa. 2003) ..................................................... 30

*G.I. Sportz, Inc. v. Valken, Inc.*, No. 116CV07170NLHKMW, 2018 WL 3105414 (D.N.J. June 25, 2018) ................................................................................................................... 23

*Gould Elecs. Inc. v. United State*s, 220 F.3d 169 (3d Cir. 2000) ................................................. 13

*Guatay Christian Fellowship v. Cty. of San Dieg*o, 670 F.3d 957 (9th Cir. 2011) ............... 13, 20

*Guru Nanak Sikh Soc. of Yuba City v. Cty. of Sutter*, 456 F.3d 978 (9th Cir. 2006) ................... 23

*Hopewell Valley Citizens' Grp., Inc. v. Berwind Prop. Grp. Dev. Co., L.P.*, 204 N.J. 569, 10 A.3d 211 (2011) .................................................................................................................... 18

*House of Fire Christian Church v. Zoning Bd. Of Adjustment Of City Of Clifton*, 379 N.J. Super. 526, 879 A.2d 1212 (App. Div. 2005) ..................................................................... 20

*Hunt Valley Baptist Church, Inc. v. Baltimore County*, Civ. No. 17-804, 2017 WL 4801542 (D. Md. Oct. 24, 2017) ........................................................................................................... 15

*In re Adoption of N.J.A.C. 5:96 & 5:97 ex rel. New Jersey Council on Affordable Housing*, 221 N.J. 1, 110 A.3d 31 (2015) ............................................................................................... 27

*In re N.J.A.C. 5:96 and 5:97*, 221 N.J. 1 (2015) ......................................................................... 10

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) 22

*In the Matter of the Application of the Township of Jackson*, Docket No. OCN-L-1879-15. 10, 28

*Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019) .................................................... 19

*Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568 (3d Cir. 2003) ..................................................... 19

*Life Covenant Church, Inc. v. Town of Colonie*, Civ. No. 14-1530, 2017 WL 4081907 (N.D.N.Y. Sept. 13, 2017) ................................................................................................................ 14

*Lyon v. Whisman*, 45 F.3d 758 (3d Cir. 1995) ............................................................................ 21

*MCI Telecomm. Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086 (3d Cir. 1995) .................................. 18

*Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884 (3d Cir. 1977) ................................... 13

*Moxley v. Town of Walkersville*, 601 F. Supp. 2d 648 (D. Md. 2009) .................................. 24, 25

*Murphy v. New Milford Zoning Com'n,* 402 F.3d 342 (2d Cir. 2005) .......................................... 20

*New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.,* 101 F.3d 1492 (3d Cir. 1996) ....................................................................................................................... 30

*Ohad Assocs. v. Twp. of Marlboro*, No. CIV. 10-2183, 2010 WL 3326674 (D.N.J. Aug. 23, 2010) ............................................................................................................... 26, 27, 28

*Patsy v. Florida Board of Regents,* 457 U.S. 496 (1982) ............................................................ 13

*Phillips v. Cty of Allegheny*, 515 F.3d 224 (3d Cir. 2008)........................................................... 12

*Phoenix Assur. Co. v. K-Mart Corp.*, 977 F. Supp. 319 (D.N.J. 1997) ....................................... 22

*Pizzo Mantin Group v. Tp. of Randolph*, 137 N.J. 216 (1994) ..................................................... 16

*Plaza v. Bernards Twp. Planning Bd.*, No. CV1711466MASLHG, 2018 WL 3637515 (D.N.J. July 31, 2018)................................................................................................................................. 30

*Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548 (3d Cir. 2002) ........................................ 23

*Rezem Family Assocs., LP v. Borough of Millstone*, 423 N.J. Super. 103, 30 A.3d 1061 (App. Div. 2011) ............................................................................................................................... 20

*Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury*, Civ. No. 09-5195, 2012 WL 1392365 (E.D.N.Y. Apr. 23, 2012) ...................................................................... 14

*Shah v. Horizon Blue Cross Blue Shield*, No. 116CV2528NLHKMW, 2018 WL 1509083 (D.N.J. Mar. 27, 2018)....................................................................................................................... 23

*Shenkel United Church of Christ v. North Coventry Township,* 2009 WL 3806769 (E.D. Pa. 2009) ...................................................................................................................................... 20

*Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. App'x 200 (3d Cir. 2012) ............................ 12

*Southern Burlington County, NAACP v. Township of Mount Laurel*, 67 N.J. 151 (1975)............. 4

*Southern Burlington County, NAACP v. Township of Mount Laurel*, 92 N.J. 158 (1983)....... 4, 11

*Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895 (7th Cir. 2005) ............................................................................................................................... 23

*Taylor Investment, LTD. v. Upper Darby Township*, 983 F.2d 1285 (3d Cir. 1993) .................... 19

*Tejada v. LittleCity Realty LLC*, 308 F. Supp. 3d 724 (E.D.N.Y. 2018) ...................................... 25

*Terminiello v. New Jersey Motor Vehicle Comm'n,* No. CIV. 11-3359 WHW, 2011 WL 6826128 (D.N.J. Dec. 27, 2011) ........................................................................................................... 24

*Theodore v. Newark Dep't of Health & Cmty. Wellness*, No. 19-CV-17726, 2020 WL 1444919 (D.N.J. Mar. 25, 2020)............................................................................................................ 22

*United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242 (3d Cir. 2016) ....................................................................................................................................... 13

*United States of America v. Township of Jackson and Jackson Planning Board,* Case No. 3:20-cv-06109 (Complaint filed May 20, 2020) ................................................................................ 2

*Victaulic Co. v. Tieman*, 499 F.3d 227 (3d Cir. 2007)................................................................. 12

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) .............................. 23

*Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338 (2d Cir. 2007)............................... 23

*Westchester Day School v. Village of Mamaroneck,* 417 F. Supp. 2d 477 (S.D.N.Y. 2006), *aff'd,* 504 F.3d 338 (2d Cir. 2007)................................................................................................... 25

*Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172 (1985) ............................................................................................................................. 19

**Statutes**

28 U.S.C. § 1367 ............................................................................................. 3, 21, 24, 25

42 U.S.C. § 1982 ....................................................................................................... 3

42 U.S.C. § 1983 ..................................................................................................... 13

42 U.S.C. § 3604 ....................................................................................................... 3

42 U.S.C. § 3617 ....................................................................................................... 3

42 U.S.C. §§ 2000cc, *et seq.* ............................................................................. *passim*

N.J.A.C. 5:21-1, *et seq.* ........................................................................................... 5

N.J.S.A. 40:55D-48b ............................................................................................... 16

N.J.S.A. 40:55D-50 ................................................................................................. 16

**Other Authorities**

A. Lee, "New Jersey's governor accused a Facebook group's page of being anti-Semitic. Facebook shut it down," CNN (Feb. 6, 2020), available at https://www.cnn.com/2020/02/06/us/facebook-new-jersey-hate-speech-trnd/index.html (accessed on May 21, 2020) ................................................................................... 9

Fair Share Housing Center, "Mount Laurel Doctrine," available at https://fairsharehousing.org/mount-laurel-doctrine/ (accessed May 21, 2020) ........................ 4

**Rules**

Fed. R. Civ. P. 12 .................................................................................................. 12

N.J. Ct. R. 4:69-4 .................................................................................................. 30

N.J. Ct. R. 4:69-6 .............................................................................................. 18, 19

**Constitutional Provisions**

U.S. Const. Amend. I ............................................................................................... 3

U.S. Const. Amend. XIV ............................................................................................ 3

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS COUNTS XIII, XIV**

**INTRODUCTION**

Jackson Township officials, spurred both by their own hostility to the Township's growing Orthodox Jewish population, and the anti-Semitic bigotry of local residents, have engaged and continue to engage in a long campaign to prevent Orthodox Jews from residing in the Township. These efforts include banning dormitories throughout the Township (although permitting them for secular uses) to prevent the Orthodox community from building yeshivas, which commonly have such housing for students; banning any new schools from residential areas (although many public and private non-Jewish schools have been constructed in such areas) in order to prevent the Orthodox community from educating their children; effectively banning *eruvin* (a ritual enclosure that permits Jewish residents or visitors to carry certain objects outside their own homes on Sabbath and Yom Kippur) to prevent the Orthodox community from engaging in religious exercise, and have even gone so far as to engage in an organized effort to spy on Orthodox Jews to determine if they are praying in residential homes.  *See generally Agudath Israel of America v. Township of Jackson, NJ,* Case No. 3:17-cv-03226 (D.N.J.), ECF No. 40; ECF No. 55 (and accompanying Memorandum and exhibits); and ECF No. 60 (and accompanying exhibits). Comments from current and former Township officials demonstrate quite clearly the nature of their hostility:

A. "[A]sk him what to do about the scourge of the cockroaches from the east," referring to Lakewood Township, Rath Decl. ¶ 8, Exh. E;

B. "They are on target for a repeat of the 1930s," Rath Decl. ¶ 9, Exh. F;

C. That it would be "reprehensible " and "not acceptable" for Orthodox Jews to move into Jackson, Rath Decl. ¶¶ 10, 11; Exh. G, H;

D. With respect to the issue of synagogues and shuls, Mayor Michael Reina was asked "If these were churches would we be fighting them?" and

responded: "Absolutely not."" Rath Decl. ¶ 12, Exh. I;

E.      "Jackson is not prepared for the tsunami of orthodoxy that is mounting at
        the border. . . ."  Rath Decl. ¶ 13, Exh. J.

These efforts and demonstrated hostility are so egregious that the United States Department of

Justice has recently filed suit against the Township and its Planning Board also alleging violations

of the Fair Housing Act, 42 U.S.C. §§ 3604, 3617 ("FHA"), and the Religious Land Use and

Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, *et seq.* ("RLUIPA").  *See United States of*

*America v. Township of Jackson and Jackson Planning Board,* Case No. 3:20-cv-06109

(Complaint filed May 20, 2020), Declaration of Sieglinde K. Rath dated May 21, 2020 ("Rath

Decl.") ¶ 6, Exh. C.  Significantly, the allegations include that "[t]he conduct of the Defendants

described in the Complaint constitutes:

> a. A pattern or practice of resistance to the full enjoyment of rights granted by the
> Fair Housing Act, 42 U.S.C. §§ 3601-3619; and/or
>
> b. A denial to a group of persons of rights granted by the Fair Housing Act, 42
> U.S.C. §§ 3601-3619, which raises an issue of general public Importance."

*Id.* ¶ 124.

One of the latest targets of the Township's war against Orthodox Jews is Plaintiff, Jackson

Trails, LLC ("JTL"), whose principal is an Orthodox Jew.  JTL sought to develop real property it

owns within the Township as a housing development for approximately 367 single-family homes

and 92 multi-family affordable housing units (the "Development").  Given current demographic

trends, it is likely that such homes would be particularly desired by the Orthodox Jewish

community moving into Jackson Township in search of affordable housing opportunities.

JTL's Development complied fully with the Township's zoning regulations.  It submitted

an application for conditional use, subdivision and site plan to the Jackson Township Planning

Board ("Board") that was consistent with the Township's land use laws.  Nevertheless, the Board

denied the application, bowing to severe anti-Semitic pressure from local residents and fears that Orthodox Jews may purchase homes and reside in the Development, and due to the inclusion in the Development of a house of worship that may be used as a synagogue.  The Board's denial also resulted in a breach of the Township's Housing Element and Fair Share Plan ("HEFSP") and an October 25, 2016 Settlement Agreement ("Settlement Agreement"), both of which included the JTL property, and a state court Judgment of Compliance and Repose with respect to the Township's affordable housing obligations under New Jersey law.  Thus, in 2017, with a complete resolution of all COAH related issues in the Township, the stage was set for affordable housing development to begin.  The only problem, from the Township's perspective, is that it involved projects that were likely to be occupied by Orthodox Jews, which is what occurred here.

JTL filed this suit against the Township and Board, asserting religious and racial discrimination with respect to the Board's decision in violation of the Fair Housing Act, 42 U.S.C. §§ 3604, 3617; the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, *et seq.*; the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1982.  As they arose out of the same set of facts and circumstances that gave rise to JTL's federal claims (and thus providing this Court with jurisdiction pursuant to 28 U.S.C. § 1367(a)), JTL's Complaint also includes claims of violation of New Jersey law, including judicial review of the Board's decision, and the Board's violation of the Township's Fair Share Plan and Settlement Agreement, which arose from prior litigation brought pursuant to the New Jersey Constitution's prohibition against municipal exclusionary planning and zoning practices.

Despite the interrelated nature of JTL's federal and state claims, which form part of the same case or controversy, the Defendants moved to dismiss these latter two claims.  For the reasons stated below, Defendants' motion should be denied in its entirety.

## STATEMENT OF FACTS

### JTL's Development

JTL owns 129.7 acres of land in the Township designated on the Township tax map as Block 23001, Lots 22-29 (the "Property").  Complaint, ECF No. 1 ¶¶ 24, 26.  JTL intended to develop the Property, situated in the Township's Residential Growth 3 ("RG-3") zoning district, as a residential housing development that would include 367 single-family homes and 92 multi-family units (satisfying the Township's *Mount Laurel* obligations[1]), and a place of worship.  *Id.* ¶¶ 25, 39.  The Development was permitted as a fully complying conditional use in the RG-3 district in the Township (where the Property is located) with no variances required.  *Id.* ¶¶ 27-29.

The Township is located directly to the west of Lakewood Township, New Jersey ("Lakewood"), where a large Orthodox Jewish community resides.  *Id.* ¶¶ 17-18.  Because of a shortage of available housing in Lakewood, some Orthodox Jews have moved from Lakewood to Jackson Township in recent years and have purchased homes there.  *Id.* ¶¶ 20-21.  In addition to the 24,500-square foot place of worship, JTL planned for the homes in the Development to have the option for amenities such as a kosher kitchen and five bedrooms, which would be desirable for Orthodox Jewish families.  *Id.* ¶¶ 31-33, 39.  Other similar housing developments in the area, including those developed by the principal of JTL, have historically been occupied by a disproportionate number of Orthodox Jews.  *Id.* ¶¶ 46-47.  Upon information and belief,

---

[1] *See generally Southern Burlington County, NAACP v. Township of Mount Laurel*, 67 N.J. 151 (1975) ("*Mount Laurel I*"), and *Southern Burlington County, NAACP v. Township of Mount Laurel*, 92 N.J. 158 (1983) ("*Mount Laurel II*").  These cases "declared that municipal land use regulations that prevent affordable housing opportunities for the poor are unconstitutional and ordered all New Jersey municipalities to plan, zone for, and take affirmative actions to provide realistic opportunities for their 'fair share' of the region's need for affordable housing for low and moderate-income people."  Fair Share Housing Center, "Mount Laurel Doctrine," available at https://fairsharehousing.org/mount-laurel-doctrine/ (accessed May 21, 2020).

Defendants are well aware of the fact that Orthodox Jews would have purchased homes in the Development based upon their relocation to other similar communities. *Id.* ¶¶ 20-23, 48-58.

### The JTL application and Board denial

On August 10, 2018, JTL applied to the Board seeking conditional use approval, preliminary and final major subdivision and site plan approval for the Development on the Property (the "Application"). The Application complied completely not only with the requirements for the RG-3 zoning district, but also with the Township's HEFSP, the State's Residential Site Improvement Standards, and all Township Code requirements under N.J.A.C. 5:21-1, *et seq.* *Id.* ¶¶ 77-83. Since the Property is located within the Pinelands area, the New Jersey Pinelands Commission ("NJPC") must review the JTL development and accept any Township approval for the same. *Id.* ¶¶ 86-87. In furtherance of this process, JTL filed its Application for the Development with the NJPC, obtaining a Certificate of Filing on April 5, 2019. *Id.* ¶¶ 88-92. There was only one inconsistency: a stormwater issue identified by the NJPC that was addressed by JTL with revisions to its Stormwater Report and Plans. *Id.* ¶¶ 93-97.

The matter was then heard by the Board at two hearings on August 19, 2019 and October 7, 2019. *Id.* ¶¶ 104, 134. The hearings were rife with procedural irregularity and veiled (and not-so-veiled) anti-Semitism from Board officials and professionals, Township officials, and Township residents. These included many irregularities involving the advisory-in-nature-only Township Environmental Commission ("EC") and its members. *Id.* ¶¶ 244-74. EC Member Stephen De Marzo[2] not only opposed the application as an EC member, but spoke in opposition to

---

[2] Mr. DeMarzo has posted anti-Semitic comments to social media, including: "That's just fucking great! Second paragraph talks about us respecting them and their religion. HOW ABOUT THEM RESPECTING OURS AND US! New [sic] flash we were here first." *Id.* ¶ 269.

the JTL Application at both Board meetings.  Despite this conflict of interest, he failed to recuse himself as a member of the EC from consideration of the JTL Application.  *Id*. ¶¶ 128, 259-71. On the morning of the second hearing, Jeffrey Riker,[3] a member of the Board hearing the JTL application and also the EC Chair, sent an email to the entire Board indicating that the application should not move forward because JTL "has not been entirely truthful" and, with respect to its engineer, stated: "We have reason to distrust his oral statements," *id*. ¶ 138, based on inconsistent testimony on previous projects.  *Id*. ¶¶ 134-39.  At JTL's request, Mr. Riker recused himself from consideration of the Application.  *Id*. ¶¶ 142-43.  Despite the Board attorney's request that any Board members who believed that the email from Mr. Riker would influence their decision making process with respect to the JTL Application recuse themselves and admonition not to consider the email, and despite the Board members' decision not to recuse themselves, a Board member did in fact raise Riker's email while the Application was pending.  *Id*. ¶¶ 145-47, 200.

Further, during the pendency of the hearings, the Board attorney had to admonish residents more than once with respect to raising irrelevant issues demonstrating hostility toward the Orthodox Jewish community, such as bussing of the children in the Development to schools.  *Id*. ¶¶ 186-90.  Another issue relating to the Orthodox Jewish community concerned basements in the homes that JTL intended to construct at the Property.  *Id*. ¶¶ 110-11.  Local residents and Township officials believe that members of the Orthodox Jewish community would illegally use their basements as rentals for other Orthodox Jews.  *Id.* ¶ 112.  Questioning on this issue included the Township Administrator and Board Member Terrence Wall asking "Does the water table indicate,

---

[3] Mr. Riker posted the following online comment: "The Asbury Park Press is a one sided rag that rattles the sabre of Anti Semitism and is entirely clueless and prefers to sanitize the history of over development and manipulation of resources for the benefit of one group. The embodied residents of Jackson want to all be equal, and not reside in segregated neighborhoods patrolled by special interest groups."  *Id*. ¶ 140.

are there any so-called English basements above ground, and if so, do they have any egress, or how does --" and "Will the basements be constructed in a manner that meets all the codes for a living area?"  *Id.* ¶ 113.  The Board's own engineer participated in such discussion, stating: "but the issue of basements. I guess what insurance is there that a house that's built with a basement doesn't turn into a two-family, the long and the short of it."  *Id.* ¶ 116.  Township residents echoed these concerns.  *Id.* ¶¶ 125-26.

More evidence demonstrating the hostility toward Orthodox Jews was discussion about the proposed place of worship component of the Development.  EC Member DeMarzo stated:

> The question I had really was about the house of worship and who decides what denomination goes in there. You just answered it. It's whoever buys the lot. So I would gather that whoever is living on the property, whoever buys all the homes, they are going to be the dominant player for that house of worship, correct?

*Id.* ¶ 128.  With respect to the house of worship, a Jackson Township resident stated:

> So I guess my other question is in regards to -- the comment was constantly made 'for the community.' What exactly does that mean? What community is this for? Because it is facing that so --
>
> . . . . And that is -- okay. So essentially, the house of worship will accommodate anyone of the faith that can go there.

*Id.* ¶ 177. The same resident has been engaged in other anti-Semitic comments and activity and is one of the founding Trustees of Citizens United to Protect Our Neighborhoods ("CUPON"), which was formed to oppose development that would likely serve the Orthodox Jewish community, including JTL's.  *Id.* ¶¶ 180-85, 288-93.  Three Township officials, Sheldon Hofstein, the former Chairman of the Township Zoning Board of Adjustment and a founding Trustee of CUPON; Joe Sullivan, a former member of the same Board; and Richard Egan, a former Planning Board member (the latter two of whom have engaged in anti-Semitic commentary), had to resign their positions after clandestinely attending a meeting of CUPON.  *Id.* ¶¶ 293-95.  The main subject of the first two CUPON meetings was stopping the JTL development.  *Id.* ¶¶ 314-19.

When it came time to vote on the JTL application, Wall made a claim of duress for certain Board members when none existed, and the vote was in the normal course. *Id*. ¶¶ 201-04. The subsequent vote was 4-4, a tie, resulting in a denial of the application under the Board's rules, which was followed by another motion made by Wall to carry the matter, which passed unanimously. *Id*. ¶¶ 206-09. On November 22, 2019, JTL filed a Motion for Reconsideration which the Board failed to act on at its December 2, 2019 meeting. *Id*. ¶¶ 211-13. On December 16, 2019, the Board adopted Resolution 2019-31 denying JTL's Application. *Id*. ¶ 241. The Resolution indicated that the application was fully conforming. *Id*. ¶ 215. The Resolution stated several "concerns" to justify denial of the application including the impact of the application on the Joint Military Base of McGuire-Dix-Lakehurst, the Applicant's environmental study, whether an additional traffic study should be required, and concerns relating to being asked to vote on the application without additional evidence. *Id*. at ¶ 216. These "concerns" were pretextual in nature and mostly directed at off-site conditions over which the Board had no jurisdiction, such as the military base which was subject to federal regulation, environmental issues within the jurisdiction of the Pinelands Commission, and off-site traffic conditions within the purview of the Ocean County Planning Board. *Id*. ¶¶ 217-19, 229-38. The other stated "concerns" included a purported lack of further information, JTL's unwillingness to consent to a further adjournment, and the fact that the Board was required to vote on the application, none of which was in violation of the state MLUL and all of which was intended solely as a stall tactic with respect to JTL's application because it would house Orthodox Jews. *Id*. ¶¶ 216, 220-28, 239-40.

The local community engaged in significant anti-Semitic hostility against the JTL application. It was a primary target of several Facebook groups, including the widely condemned Rise Up Ocean County, which was shut down by Facebook with assistance from the New Jersey

Governor and Attorney General[4] and whose group members, upon information and belief, colluded with other Township officials about the JTL Application. *Id.* ¶¶ 319-51, 408-12.

All of this occurred against a backdrop of anti-Semitic hostility in the Township opposing Orthodox Jews from obtaining housing including (1) Township residents having initiated and participated in a campaign known as "Jackson Strong," which is intended to discourage homeowners from selling their homes to the Orthodox Jewish community, with the support of Township officials, *id.* ¶¶ 356-57; (2) there are a number of lawsuits pending against the Township related to hostility toward Orthodox Jews, one filed by Agudath Israel of America and WR Property LLC against the Township as a result of its enactment in 2017 of Ordinances No. 03-17, 04-17 and 20-17 prohibiting schools from locating in the Township's residential zoning districts, and prohibiting outright dormitories and *eruvs* throughout the Township, and an action filed by Oros Bais Yaakov High School based upon a land use denial for an Orthodox Jewish girls' high school by the Township Zoning Board of Adjustment, *id.* ¶¶ 359-64, 379-84; (3) targeting *sukkahs* and the surveillance of specific homes owned by Orthodox Jewish individuals, including on a "watch list," *id.* ¶¶ 365, 385-98; (4) baseless "blockbusting" complaints about the Orthodox Jewish community submitted by the Township to the United States Department of Justice and the New Jersey Attorney General, *id.* ¶¶ 367-69; and (5) the Township's adoption of a new "no-knock" ordinance, landlord registration and trailer ordinance targeting Orthodox Jews, *id.* ¶¶ 370-71; among other evidence. *Id.* ¶¶ 372-76; *see also* United States' Complaint, Rath Dec. Exh. C.

---

[4] This Court can take judicial notice of the much-publicized closing of the Rise Up Ocean Facebook page. Rath Decl. ¶ 4, Exh. B. *See, e.g.,* A. Lee, "New Jersey's governor accused a Facebook group's page of being anti-Semitic. Facebook shut it down," CNN (Feb. 6, 2020), available at https://www.cnn.com/2020/02/06/us/facebook-new-jersey-hate-speech-trnd/index.html (accessed on May 21, 2020).

**The COAH Background**

Defendants' motion challenges this Court's jurisdiction to consider Counts XIII and XIV of JTL's Complaint, the latter of which arise out of the Township's negotiated and judicially sanctioned affordable housing obligations.   On July 7, 2015, the Township filed a lawsuit captioned *In the Matter of the Application of the Township of Jackson*, Docket No. OCN-L-1879-15 in the Superior Court of New Jersey, Law Division, Ocean County, concerning the Township's obligation to provide for its fair share of the regional need for low and moderate income housing, pursuant to the New Jersey Supreme Court's 2015 decision *In re N.J.A.C. 5:96 and 5:97*, 221 N.J. 1 (2015) ("*Mount Laurel IV*").   That action was resolved by a Settlement Agreement.  *Id.* ¶¶ 416, 418.  The Settlement Agreement requires that 20% of the total housing units of any development that is to be built within the Township's Regional Growth ("RG") zoning districts, specifically, the RG-2 and RG-3 zones, be low and moderate income housing. *Id.* ¶ 421.  This included JTL's property, known as "Jackson Trails," which was proposed by the parties to include development of 367 units, 92 units of which would be set-aside and made affordable to low and moderate-income households.  *Id.* ¶¶ 421-23.  An order was entered by the state court memorializing this Settlement Agreement and directing the Township to create and submit a HEFSP for the court to review and determine whether the proposed plan set forth therein was constitutionally compliant and provided a fair and reasonable opportunity for the Township to meet its *Mount Laurel* obligations.  *Id.* ¶¶ 424-25.  In reliance on the Settlement Agreement and the June 8, 2017 HEFSP created by the Township, which also included the JTL property, the state court entered a Judgment of Compliance and Repose ("JOR") on August 16, 2017, approving the HEFSP and, significantly, providing the Township with immunity from

10

*Mount Laurel* builder's remedy lawsuits through July 1, 2025.  *Id.* ¶¶ 426-31.[5]  JTL has standing

to enforce this agreement and HEFSP.  *See S. Burlington Cty. N.A.A.C.P. v. Mount Laurel Twp.*,

92 *N.J.* 158, 337, 456 A.2d 390, 483 (1983) ("any individual demonstrating an interest in, or any

organization that has the objective of, securing lower income housing opportunities in a

municipality will have standing to sue such municipality on *Mount Laurel* grounds.").

Additional evidence demonstrating hostility toward Orthodox Jews on the part of the Board

involves another development called "Jackson Parke."  In 2019, developers of that project filed an

application with the Board to construct a 551-unit development in the Township.  *Id.* ¶ 435.  Like

JTL, that development was to provide affordable housing and was included in the Township's

HEFSP.  *Id.* ¶¶ 436-37.  Wall also engaged in questioning regarding basements there, including

asking how many English basements there would be, and if they would have any ingress or egress.

Many of the same Township residents who opposed the JTL Application spoke out against the

Jackson Parke application, and it was also a subject of the CUPON meetings.  *Id.* ¶¶ 438-441.

Contemporaneous with the JTL denial, the Board voted to deny the Jackson Parke application on

November 4, 2019, knowing that--as with JTL's Development--Orthodox Jewish residents would

likely have purchased homes there.  *Id.* at ¶¶ 442-444.  However, the denial was appealed to state

court and that court, without even holding a hearing, "found it appropriate to direct the Jackson

Township Planning Board to reconsider its denial."  Rath Decl. ¶ 3, Exh. A.  The application was

reconsidered by the Board on April 20, 2020 and granted preliminary approval.  Rath Decl. ¶ 5.

---

[5] To facilitate the Township's compliance, the JOR directed the Township to implement
the HEFSP and further provided that: "The Planning Board. . . . shall . . . implement and expedite
the components of the Township's compliance package . . . expedite all. . . . Board development
approvals of all inclusionary developers identified in the [HEFSP]to facilitate . . . affordable
housing."  *Id.* ¶¶ 432-33.

**STANDARD OF REVIEW**

Defendants have captioned their Motion as a Motion to Dismiss for failure to exhaust administrative remedies pursuant to Federal Rule of Civil Procedure 12(b)(1) and a Motion for failure to state a claim pursuant to Rule 12(b)(6). ECF No. 11. Both motions are subject to the same standard of review. *See Congregation Kollel, Inc. v. Twp. of Howell, N.J.*, No. CV 16-2457 (FLW), 2017 WL 637689, at *4 (D.N.J. Feb. 16, 2017). A Rule 12(b)(6) motion tests whether a complaint meets the notice pleading requirements of Rule 8(a), which requires a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. App'x 200, 202 (3d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint need only "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In assessing whether the Complaint's allegations support a reasonable inference of liability, the Court need not assess the likelihood that the allegations will prove true or that a factfinder will ultimately draw the inferences that plaintiff urges. *Phillips v. Cty of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 555, 563 n.8). Instead, the Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in Plaintiff's favor. *Id*. When a complaint, so construed, offers facts that "raise a right to relief above the speculative level," then the plaintiff is entitled to proceed to discovery in order to prove those facts and inferences. *See Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

Where, as here, the Defendants have challenged this Court's subject matter jurisdiction "in fact" over two of Plaintiff's claims, the "court is free to weigh the evidence and satisfy itself whether it has power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884,

891 (3d Cir. 1977). Plaintiff bears "the burden of proving that jurisdiction exists." *Dworjan v.*

*United States*, No. CV132671MASTJB, 2014 WL 12600259, at *2 (D.N.J. Apr. 30, 2014). The

Third Circuit court has further held:

> When a Rule 12(b)(1) motion is evaluated as a "factual attack" on the Court's subject matter jurisdiction, "the court may consider evidence outside the pleadings" in evaluating that attack. When a motion to dismiss implicates both Rule 12(b)(6) and Rule 12(b)(1), outside evidence may be considered for Rule 12(b)(1) purposes but not for Rule 12(b)(6) purposes.

*United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 251 (3d

Cir. 2016) (quoting *Gould Elecs. Inc. v. United State*s, 220 F.3d 169, 176, 178 (3d Cir. 2000)).

This Court may therefore consider the additional evidence submitted in support of JTL's

contention that this Court should exercise jurisdiction over all of JTL's claims.

## ARGUMENT

## I.   DEFENDANTS' FIRST POINT CONTAINS NO ARGUMENT.

Defendants' "Point I" merely restates various legal standards and contains no argument

other than a conclusory statement that "this Court must dismiss Counts XIII and XIV of plaintiff's

Complaint for lack of subject matter jurisdiction." ECF No. 11-3 at 16-17. Other than the standard

of review, recited above by Plaintiff, no further response is necessary. However, given the

Defendants' repeated focus on the doctrine of "exhaustion" throughout its motion, it is important

to note that "exhaustion" of remedies is not required for Plaintiff's federal claims, *see Patsy v.*

*Florida Board of Regents,* 457 U.S. 496 (1982) (a party bringing a civil rights action under 42

U.S.C. § 1983 is not required to exhaust state remedies before filing suit in federal court);

*Congregation Rabbinical Coll. of Tartikov, Inc.,* 138 F. Supp. 3d 352, 447 (S.D.N.Y. 2015)

(exhaustion of administrative remedies not required in RLUIPA land use case); *Guatay Christian*

*Fellowship v. Cty. of San Dieg*o, 670 F.3d 957, 979 (9th Cir. 2011) (same); *Dilaura v. Ann Arbor*

13

*Charter Twp.*, 30 F. App'x 501, 507 (6th Cir. 2002) (same).  Further, as discussed below, there are no other administrative remedies available to JTL with respect to the state law claims over which this Court has supplemental jurisdiction.

## II.   PLAINTIFF'S COMPLAINT CONTAINS SUFFICIENT ALLEGATIONS TO STATE CLAIMS WITH RESPECT TO COUNTS XIII AND XIV.

Defendants next argue that JTL has failed to state a claim with respect to Counts XIII and XIV of its Complaint.  ECF No. 11-3 at 18-20.  However, they do not actually address the allegations supporting these claims.  Instead, they merely state that Plaintiff has not pursued these claims in state court.  *Id*. at 19 ("That Plaintiff has not sought such remedies should result in the dismissal of the counts").  This is a *non sequitur*.  Any state law claim over which a federal court exercises supplemental jurisdiction would not have previously been pursued in state court, otherwise there would be a preclusive effect from such prior judgment.

There is no requirement to pursue state judicial remedies prior to filing a claim in federal court.  "[W]hile a plaintiff in a land-use case must obtain a final decision before commencing suit, [it] need not exhaust all potential state court remedies before seeking relief in federal court."  *Life Covenant Church, Inc. v. Town of Colonie*, Civ. No. 14-1530, 2017 WL 4081907, at *6 (N.D.N.Y. Sept. 13, 2017); *see also Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury*, Civ. No. 09-5195, 2012 WL 1392365, at *6-7 (E.D.N.Y. Apr. 23, 2012) ("The Diocese's failure to commence an Article 78 [judicial] proceeding to request review of the Resolution does not render its claims unripe for judicial review given that the administrative process, per se, had run its course."); *Eagle Cove Camp & Conference Center v. Town of Woodboro*, Civ. No. 10-00118, slip op. at 8-10 (W.D. Wis. Mar. 24, 2011) (Rath Decl. ¶ 7, Exh. D) ("[T]he availability of state remedies does not mean that an aggrieved property owner is required to take advantage of them. . . . While plaintiffs may pursue a state remedy, namely

certiorari review pursuant to Wis. Stat. § 59.694(10), they need not do so to pursue the present action."); *Hunt Valley Baptist Church, Inc. v. Baltimore County*, Civ. No. 17-804, 2017 WL 4801542, at *21 (D. Md. Oct. 24, 2017) ("The Church was not required to exhaust the County or State appellate process before pursuing its federal constitutional claims under § 1983 or its statutory claim under RLUIPA.").

Although Defendants offer no argument specifically as to their "failure to state a claim" Point, there is no question that the Complaint's allegations state claims with respect to both of these Counts. Count XIII of JTL's Complaint contains detailed factual allegations enabling this Court to conclude that the Board acted in an arbitrary, capricious and unreasonable manner when it denied the fully conforming Application, and said denial should therefore be reversed. Again, at Point III(A)(2) of their brief, Defendants baldly assert that "the denial of plaintiff's Land Use Application was neither arbitrary nor capricious," without addressing these allegations.

New Jersey courts have noted that the arbitrary and capricious standard, while sounding harsh, is simply a standard of review. *Anastasio v. Planning Bd. Of Tp. of West Orange*, 209 *N.J. Super.*, 499, 522 (App. Div. 1986), *certif. den.*, 107 N.J. 46 (1986). A planning board's decision must be supported by substantial evidence and be "grounded in evidence in the record." *Fallone Props., LLC v. Bethlehem Twp. Planning Bd.*, 369 N.J. Super. 552, 562, 849 A.2d 1117, 1122 (App. Div. 2004). In this case, the Board's Resolution of Denial is contrary to the statutory criteria and not supported by the factual record and testimony presented to the Board. As detailed in its Complaint, JTL submitted a substantial number of documents in support of the Application, including various subdivision plans, boundary surveys, architectural floor plans and drawings, construction plans, and stormwater management reports, many of which were updated during the Board's consideration of the Application. ECF No. 1 ¶ 510. JTL also supplied an Environmental

Impact Statement, dated June 30, 2018, and a Traffic Impact Study, dated January 3, 2019, which was updated on July 19, 2019. *Id.* ¶ 511. JTL also presented expert testimony of various experts in further support of its Application during the Board hearings. *Id.* ¶ 512.

Indeed, the Board acknowledged in its Resolution that "each of the proposed building lots would comply with the specific area, dimensional and setback requirements of the RG-3 Zoning District." *Id.* ¶ 514. Nonetheless, contrary to the Board's acknowledgement that JTL's proposed inclusionary development Application was consistent with the zoning district provisions governing the zoning district in which the Property is located, the Board denied the Application, setting forth certain pretextual reasons in its Resolution, including: (a) the impact of this application on the Joint Military Base of McGuire-Dix-Lakehurst; (b) the age of several Environmental Studies; and (c) the need for additional Traffic Studies as the phasing plan was completed. *Id.* ¶ 515.

However, New Jersey substantive law clearly holds that subdivision applications that conform to the relevant zoning ordinances <u>must</u> be granted by planning boards.[6] *See Pizzo Mantin Group v. Tp. of Randolph*, 137 N.J. 216 (1994) (holding that zoning and planning are the sole province of a governing body, and that a planning board's denial of a fully conforming application is a usurpation of authority). As found in the Board's Resolution itself, JTL's Application was fully conforming despite the Resolution's vague reference to "impacts or concerns" that find no authority in an ordinance. The Board's plain legal obligation was approving the Application, and its denial of the same provides a classic example of "arbitrary and capricious" action by a Board. Moreover, it is further alleged in Count XIII that the Board's professed "concerns" about "impacts"

---

[6] N.J.S.A. 40:55D-48b provides in pertinent part: "[T]he planning board <u>shall</u>, if the proposed subdivision complies with the Ordinance and this act, grant preliminary approval to the subdivision." (Emphasis added.) Moreover, "the planning board <u>shall</u> grant final approval if the detailed drawings, specifications, and estimates of the application for final approval conform to the standards established by ordinance." N.J.S.A. 40:55D-50.b (emphasis added).

were pretextual, and that the Board's actions was actually taken due to various remarks demonstrating an atmosphere of religious and racial animus towards Orthodox Jews who would live and worship in JTL's proposed development, clearly a capricious exercise of its authority.

JTL's conforming Application was amply supported by sufficient evidence, proofs, and undisputed expert testimony in the record before the Board fully demonstrating compliance with the standards set forth in the Municipal Land Use Law and the applicable ordinances. Indeed, four members of the Board were candid enough to agree. The denial of this Application can only be seen under all of these circumstances as being clearly arbitrary, capricious and unreasonable.

## III.   DEFENDANTS' "POINT III," WHICH AGAIN ARGUES THAT PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED BECAUSE THEY WERE NOT PURSUED IN STATE COURT, SHOULD BE REJECTED.

"Point III" in Defendants' brief appears to argue various unrelated concepts--exhaustion (again), substantive due process (which has nothing to do with the state law claims that are the subject of the motion), ripeness (although there is a final administrative determination), exhaustion (yet again), and a one-paragraph argument on the merits regarding Count XIII--none of which support dismissal of JTL's claims. ECF No. 11-3 at 21-33. Plaintiff will attempt to unravel this section of Defendants' memorandum.

### A.   Defendants' Exhaustion Arguments, Redux.

For the third, fourth and fifth times in their brief, Defendants argue that JTL failed to avail itself of "proper judicial remedies" and "valid mechanisms to seek redress." ECF No. 11-3 at 22, 27-29, 30-31. Repetition does not strengthen Defendants' argument, and it should be rejected for the same reasons as discussed above. It is undisputed that the Board made a final decision in voting to deny JTL's application and memorialized the same in a resolution adopted on December 16, 2019. ECF No. 1 ¶¶ 204-06, 214, 241. In accordance with N.J.S.A. 40:55D–10(i), notice of

the decision was then published in a local newspaper on December 21, 2019. *Id.* ¶ 242. JTL had

45 days or until February 4, 2020 within which to challenge the decision pursuant to New Jersey

Rule of Court 4:69-6(b)(3), which provides in pertinent part:

> 4:69-6. Limitation on Bringing Certain Actions
>
> > (b) Particular Actions. No action in lieu of prerogative writs shall be commenced
> > . . . .
> > > (3) to review <u>a determination of a planning board</u> or board of adjustment, or
> > > a resolution by the governing body or board of public works of a
> > > municipality approving or disapproving a recommendation made by the
> > > planning board or board of adjustment, after 45 days from the publication
> > > of a notice once in the official newspaper of the municipality or a newspaper
> > > of general circulation in the municipality, provided, however, that if the
> > > determination or resolution results in a denial or modification of an
> > > application, after 45 days from the publication of the notice or the mailing
> > > of the notice to the applicant, whichever is later.

*Id.* (emphasis added). This action challenging the Board's decision was commenced on February

3, 2020, within that 45-day period. ECF No. 1.[7] JTL's appeal was timely and there are no further

administrative remedies to exhaust with respect to Count XIII. *See Hopewell Valley Citizens' Grp.,*

*Inc. v. Berwind Prop. Grp. Dev. Co., L.P.*, 204 N.J. 569, 576, 10 A.3d 211, 216 (2011) ("Appeals

from local land use decisions are accomplished by actions in lieu of prerogative writs."). The only

further step Plaintiff can take under state law is to file a legal action against the Board's decision,

which is exactly what Count XIII of this action is, albeit submitted as a pendent claim in this Court.

> B.    <u>Substantive Due Process.</u>

Defendants' substantive due process arguments, *see* ECF No. 11-3 at 22-26, are misplaced.

---

[7] Although Count XIII is a claim arising under state law that the Board's denial was
arbitrary and capricious, it does not specifically state that it is an action in lieu of prerogative writ
pursuant to N.J. Ct. R. 4:69-6(b)(3), as this matter is brought in federal, not state court. *MCI*
*Telecomm. Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086, 1109 (3d Cir. 1995) (federal court looks to
federal, rather than state, law to determine jurisdiction). However, if the Court deems that such
specific characterization of Count XIII be made, Plaintiff will amend the Complaint to so reflect.

They have moved only to dismiss Counts XIII and XIV of JTL's Complaint.   ECF No. 11 at 3-4;

ECF No. 11-3 at 8; ECF No. 11-4 at 1-2.   These are two state law claims over which this Court

has supplemental jurisdiction.   The Defendants have not moved to dismiss JTL's federal

substantive due process claim, Count X of JTL's complaint.   Yet, Defendants engage in an

irrelevant discussion of this claim for several pages of their brief.

  C. <u>Ripeness.</u>

  It appears that Defendants also challenge Counts XIII and XIV as not "ripe" for

adjudication.   ECF No. 11-3 at 26-29.   They claim the Board's decision is not a "final decision."

This is wrong.   There is no further administrative review of the Board's decision.   *See* N.J. Ct. R.

4:69-6(b)(3); *supra*, § III(A).   Counts XIII and XIV are "ripe" for review, as the Planning Board

has made a final decision on the Application.   *Williamson County Regional Planning Comm'n v.*

*Hamilton Bank of Johnson City,* 473 U.S. 172, 186 (1985) (claim is ripe when a "government

entity charged with implementing the regulations has reached a final decision regarding the

application of the regulations to the property at issue."), *overruled on other grounds by Knick v.*

*Twp. of Scott, Pennsylvania,* 139 S. Ct. 2162 (2019); *Congregation Anshei Roosevelt v. Planning*

*& Zoning Bd. of Borough of Roosevelt*, 338 F. App'x 214, 217 (3d Cir. 2009).   The vote on and

subsequent adoption and publication of the Resolution denying the JTL application was a final

determination.   There are no further administrative remedies to pursue.

  The cases cited by Defendants are inapposite as they all involve situations where there was

further review possible by the "zoning authorities," or where the decision was held to be ripe for

review.   ECF No. 11-3 at 26.   *See Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568 (3d Cir. 2003)

(case ripe for adjudication); *Taylor Investment, LTD. v. Upper Darby Township*, 983 F.2d 1285

(3d Cir. 1993) (plaintiff did not seek relief from zoning hearing board); *41 Maple Assocs. v.*

*Common Council of City of Summit*, 276 N.J. Super. 613, 620, 648 A.2d 732, 736 (App. Div. 1994) ("plaintiffs' claim had not ripened by the issuance or final denial of a building permit");[8] *House of Fire Christian Church v. Zoning Bd. Of Adjustment Of City Of Clifton*, 379 N.J. Super. 526, 547, 879 A.2d 1212, 1225 (App. Div. 2005) ("The Church's RLUIPA claim shall not be reconsidered prior to a final decision by the [Zoning] Board [of Adjustment]."). Here, there is no further review by zoning authorities possible; the only further action is judicial review, which is exactly what Count XIII is. *Compare with Rezem Family Assocs., LP v. Borough of Millstone*, 423 N.J. Super. 103, 30 A.3d 1061 (App. Div. 2011) (plaintiff did not seek judicial remedy); *Casser v. Twp. of Knowlton*, 441 N.J. Super. 353, 118 A.3d 1071 (App. Div. 2015) (same). Defendants appear to make the illogical argument that JTL cannot seek judicial review of the Board's decision until after they seek judicial review of the Board's decision. Whether this Court can exercise supplemental jurisdiction over JTL's judicial review claim is a separate question--and one that is addressed

---

[8] *41 Maple Associates* does not contain the language "judicial proceedings" as quoted in Defendants memorandum at page 27. Nevertheless, it is inapposite as it was a Takings case, which (unlike other constitutional claims) at the time it was decided required a plaintiff to seek just compensation through available state court remedies before being ripe for review. However, this was pursuant to the second prong of the two-pronged analysis of *Williamson County, supra*, which has since been overruled by *Knick v. Township of Scott*, *supra*. Even prior to *Knick*, the "prong two ripeness" test was irrelevant to federal claims other than Takings claims. *See Murphy v. New Milford Zoning Com'n,* 402 F.3d 342, 349 (2d Cir. 2005) (emphasis added) ("Under the second prong of *Williamson County* a property owner must seek compensation for an alleged taking before proceeding to federal court. . . . The 'prong-two ripeness' test is germane to takings challenges as it 'stems from the Fifth Amendment's proviso that only takings without 'just compensation' infringe that Amendment.' *Suitum*, 520 U.S. at 734, . . . . It follows that because we are not confronted with such a claim, this aspect of *Williamson County* is not implicated."); *Bikur Cholim, Inc. v. Village of Suffern,* 664 F. Supp. 2d 267, 274 n.3 (S.D.N.Y. 2009) ("The Takings analysis [of *Williamson*] is not relevant here, even though the remainder of the Supreme Court's analysis related to land use challenges is."); *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 977 n.15 (9th Cir. 2011) ("Today we extend only the final decision requirement to RLUIPA claims; the exhaustion requirement in Williamson County was specific to the takings context."); *Shenkel United Church of Christ v. North Coventry Township,* 2009 WL 3806769, at *3 (E.D. Pa. 2009) ("Where a land use dispute arises from constitutional claims that do not require just compensation, the second prong of *Williamson* does not apply.").

below--but seeking judicial review under state law is what is being done here (in addition to JTL's predominant federal claims).

      D.    <u>Failure to State a Claim, Count XIII.</u>

Defendants again raise the merits of Count XIII at pages 32 to 33 of their brief.  The argument should be rejected for the same reasons discussed above.  *See supra*, Argument, § II.

## IV.    RESOLUTION OF COUNT XIV DOES NOT INVOLVE A COMPLEX OR NOVEL ISSUE OF STATE LAW

Finally, at page 34 of their memorandum, Defendants get to the heart of the matter with respect to Count XIV of JTL's Complaint:  Do any of the reasons described in 28 U.S.C. § 1367(c) justify a decision to decline exercising jurisdiction over JTL's pendent claim?  In this case, they do not.  Defendants rely solely on 28 U.S.C. § 1367(c)(1) to argue that Count XIV presents a "novel or complex issue of state law."  ECF No. 11-3 at 35.  (Significantly, Defendants do not argue that 28 U.S.C. § 1367(c) applies to Count XIII of the Complaint.)  As discussed below, any "novel or complex issues" have already been addressed by the state courts; the only issue here is whether the Defendants breached their Settlement Agreement and their HEFSP.  This is a far cry from novel and complex--it is simply a matter of applying the terms of a contract.

The Third Circuit reiterated the standard for determining whether to exercise supplemental jurisdiction in *Lyon v. Whisman*, 45 F.3d 758 (3d Cir. 1995).  In order to evaluate the propriety of supplemental jurisdiction, the Court must determine whether the circumstances of this action meet three requirements.  First, "'[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court.'"  *Lyon*, 45 F.3d at 760 (citation omitted).  Second, the federal claim and pendent state law claims "'must derive from a common nucleus of operative facts.'"  *Id.* (citation omitted).  Third, the Court must consider whether Plaintiffs' claims "'would ordinarily be expected'" to arise in one judicial proceeding.  *Id.* (citation omitted).

Count XIV meets the standard of *Lyon.*  JTL's breach claims arise out of the same set of facts as its federal claims:  The denial of JTL's Application.  *See Phoenix Assur. Co. v. K-Mart Corp.*, 977 F. Supp. 319, 324 (D.N.J. 1997) (exercising jurisdiction because "all of [Plaintiff's] claims concern a single shipment of lost watches"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 303 (3d Cir. 1998) ("all of the claims derive from the same common scheme" to defraud); *431 E Palisade Ave. Real Estate, LLC, v. City of Englewood*, No. 219CV14515BRMJAD, 2019 WL 5078865, at *5 (D.N.J. Oct. 10, 2019) (supplemental jurisdiction over various state claims in action involving RLUIPA, FHA and other constitutional claims); *A.S. v. Ocean Cty. Fire Acad.*, No. CV1911306MASDEA, 2020 WL 1516972, at *3 (D.N.J. Mar. 30, 2020) ("remaining common-law and state-law claims against Defendant arise from a common nucleus of operative fact as those jurisdiction-invoking claims: Defendant's conduct as an instructor at the Fire Academy."); *Theodore v. Newark Dep't of Health & Cmty. Wellness*, No. 19-CV-17726, 2020 WL 1444919, at *5 (D.N.J. Mar. 25, 2020) ("Plaintiff's LAD claims, . . . based on the exact same facts as Plaintiff's remaining federal claims.").

Specifically, Count XIV alleges that Defendants' wrongful denial of the Application violated the terms of the HEFSP and Settlement Agreement.  Count XIV properly incorporates by reference all allegations related to Defendants' aforementioned federal constitutional violations, including obstructing JTL from developing homes within the Township in order to prevent Orthodox Jews from residing in the Township.  These facts provide the framework and clear support for JTL's claim that Defendants also violated the HEFSP and Settlement Agreement. Courts, including this Court, regularly assert supplemental jurisdiction over such breach claims. *See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d at 303; *G.I. Sportz, Inc. v. Valken, Inc.*, No. 116CV07170NLHKMW, 2018 WL 3105414, at *2 (D.N.J. June

25, 2018) (breach of contract, common law infringement, and unfair competition claims arise under New Jersey law); *Shah v. Horizon Blue Cross Blue Shield*, No. 116CV2528NLHKMW, 2018 WL 1509083, at *1 (D.N.J. Mar. 27, 2018) (breach of contract claim joined with federal statutory claims).

Similarly, the violation of the Settlement Agreement and HEFSP supports JTL's federal claims of discrimination. Courts have held that discriminatory purpose may be inferred from the totality of relevant facts, including circumstantial and direct evidence such as, *inter alia*: the series of events leading up to a land use decision; the context in which the decision was made; whether a discriminatory impact was foreseeable; and whether less discriminatory avenues were available. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267-68 (1977). "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights*, 429 U.S. at 266; *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 563 (3d Cir. 2002). The fact that these Defendants breached their own voluntarily negotiated Settlement Agreement and HEFSP based upon that agreement, is evidence relevant to JTL's FHA, RLUIPA, Equal Protection and § 1982 claims; eight of the claims before this Court. *See Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 352 (2d Cir. 2007) ("arbitrary and unlawful nature of the ZBA denial of WDS's application supports WDS's claim that it has sustained a substantial burden"); *Guru Nanak Sikh Soc. of Yuba City v. Cty. of Sutter*, 456 F.3d 978, 986-987 (9th Cir. 2006) (court undertook in depth analysis of local zoning law and administrative record of CUP denial in determining RLUIPA violation); *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895 (7th Cir. 2005) (detailed tracing of zoning history and analysis of City's land use actions undertaken by the Court to support

violation of RLUIPA).

Further, supplemental jurisdiction applies to any state law claim, even such "record-review" appeals of administrative action as Count XIII,[9] although Defendants do not argue that the Court should not exercise supplemental jurisdiction over Count XIII pursuant to 28 U.S.C. § 1367(c).  *See City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997). This principle has regularly been applied to RLUIPA/§ 1983 cases:

> Count XVI of Plaintiffs' Amended Complaint seeks judicial review and reversal of the Board of Appeals' denial of the AMC's application for a special exception. Pursuant to Maryland Code, Article 66B, Section 4.08(a), an "appeal" of a decision may be made "to the circuit court of the county" in which the administrative decision is made, . . . .
>
> Under 28 U.S.C. § 1367, federal district courts may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In City of Chicago v. International College of Surgeons, 522 U.S. 156, 118 S. Ct. 523, 139 L.Ed.2d 525 (1997), the Supreme Court explained that "[t]here is nothing in the text of § 1367(a) that indicates an exception to supplemental jurisdiction for claims that require on-the-record review of a state or local administrative determination." *Id.* at 169, . . . .

*Moxley v. Town of Walkersville*, 601 F. Supp. 2d 648, 666 (D. Md. 2009) (religious land use case involving RLUIPA and state appeal).  *See also Congregation Kol Ami v. Abington Tp.*, 2004 WL 1837037, at *19 (E.D. Pa. Aug. 17, 2004) (exercising jurisdiction over state record-review claim);

---

[9] The fact that Count XIII is a record-review appeal of an administrative board's decision is of no moment.  The Supreme Court has expressly held that a federal court may exercise jurisdiction over "claims that require on-the-record review of a state or local administrative determination."  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 169 (1997).  This Court has retained jurisdiction in a variety of cases where similar New Jersey law claims were joined with federal claims.  *See Terminiello v. New Jersey Motor Vehicle Comm'n,* No. CIV. 11-3359 WHW, 2011 WL 6826128, at *6 (D.N.J. Dec. 27, 2011) ("Plaintiffs' state claims 'derive from a common nucleus of operative fact' with the federal claims."); *Armano v. Martin*, 157 F. Supp. 3d 392, 398-99 (D.N.J. 2016), *aff'd,* 703 F. App'x 111 (3d Cir. 2017) (exercise of supplemental jurisdiction over prerogative writ and contract claims); *Cellular Tel. Co. v. Zoning Bd. of Adjustment of Harrington Park,* 90 F. Supp. 2d 557, 560 (D.N.J. 2000) (court would take jurisdiction of prerogative writ claim joined with federal Telecommunications Act of 1996 claim).

*Westchester Day School v. Village of Mamaroneck,* 417 F. Supp. 2d 477, 560 (S.D.N.Y. 2006), *aff'd*, 504 F.3d 338 (2d Cir. 2007) ("[T]his Court has independent authority to address WDS's claim that the ZBA's decision was arbitrary and capricious in its exercise of supplemental jurisdiction as governed by New York law and N.Y.C.P.L.R. § 7801 et seq., pursuant to 28 U.S.C. § 1367."). The same applies with Fair Housing Act violations. *See Bethlehem Enterprises, Inc. v. City of Oak Forest*, No. 06 C 1772, 2007 WL 9706478, at *6 (N.D. Ill. Jan. 25, 2007) (exercising supplemental jurisdiction over administrative on-the-record review of decision regarding treatment of plaintiff's license application by the City, the Zoning Commission, and various city employees); *Moxley,* 601 F. Supp. 2d at 666-67; *Dr. Gertrude A. Barber Ctr., Inc. v. Peters Twp.*, 273 F. Supp. 2d 643, 650 (W.D. Pa. 2003) (retention of zoning hearing board denial of special exception for residential group home joined with FHA claims).

Courts have also retained jurisdiction of other state law claims similar to Count XIV when joined with FHA claims. *See Fair Hous. Council of San Diego v. Penasquitos Casablanca Owner's Ass'n,* No. 05CV0072-LAB RBB, 2005 WL 7146037, at *3 (S.D. Cal. July 5, 2005) (retention of California Fair Employment and Housing Act claim joined with FHA claim); *Tejada v. LittleCity Realty LLC*, 308 F. Supp. 3d 724, 733 (E.D.N.Y. 2018) (claim under city's rent stabilization laws retained when joined with federal FHA claim); *Borum v. Brentwood Vill., LLC*, 218 F. Supp. 3d 1, 23-24 (D.D.C. 2016) (court retained claim under District of Columbia Human Rights Commission joined with FHA claim where alleged that redevelopment project would disproportionately reduce the amount of apartments available for families).

This Court has the authority under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over Counts XIII and XIV of JTL's complaint, and the four subsections of 1367(c) provide no countervailing reason to refuse such exercise. Defendants raise only the first subsection of that

statute, that Count XIV raises a "novel or complex issue of State law," in arguing that the Court should not exercise supplemental jurisdiction over it.  ECF No. 11-3 at 35-41.  This argument fails because the Court is not being asked to apply principles of constitutional *Mount Laurel* obligations, but only to decide whether an already-determined obligation has been breached.

Defendants rely heavily on *Ohad Assocs. v. Twp. of Marlboro*, No. CIV. 10-2183, 2010 WL 3326674 (D.N.J. Aug. 23, 2010), but that decision is easily distinguished.  There, the plaintiff developer commenced suit in state court claiming a breach of a settlement agreement, reached after years of negotiation and revision by the plaintiff developer with the municipality with respect to COAH obligations, and after the planning board denied plaintiff's application.  The plaintiff alleged an unconstitutional taking together with due process and equal protection violations in their state court suit.  Defendants removed the case to federal court.  In considering whether to exercise supplemental jurisdiction over the state law claims, the Court noted that there was <u>ongoing</u> involvement of COAH with respect to the plaintiff's property at the time of the planning board denial, which the parties acknowledged.  The Court explained the tangled involvement of COAH in the dispute between the parties:

> Around the time Plaintiff filed its 2004 lawsuit against the Planning Board, Marlboro Township again re-petitioned COAH for certification of yet another amended compliance plan. Plaintiff objected to this new plan. The parties engaged in mediation, and they reached a settlement agreement on May 31, 2005, which was ratified by the Marlboro Town Council on August 11. There were some difficulties consummating the settlement, leading to a second settlement agreement, which was again signed and ratified, this time in the summer of 2007. Unfortunately, there were problems consummating this settlement as well. The parties engaged in further mediation, which lead to the additions of two addenda to the 2007 settlement agreement, but despite these achievements, talks broke down in late 2009. Plaintiff then filed this lawsuit on March 30, 2010.

*Id*. at *2.[10]  Based upon this <u>ongoing involvement of COAH with respect to the property</u> and the parties and the principle of comity, the Court remanded the state law claim of breach of the settlement agreement to the state court.  *Id.* at *6-*7.  There is no such "ongoing involvement" of COAH or otherwise to determine the Township's affordable housing obligations with respect to the Property here, which was the basis for the Court's decision to decline supplemental jurisdiction in *Ohad*.  Those have already been determined and are not in dispute.

Defendants fail to assert any such similar facts because there is no current COAH involvement or oversight of the parties and the JTL Property.  All COAH involvement with the Township and the Property ceased when the New Jersey Supreme Court issued its landmark decision in the case *In re Adoption of N.J.A.C. 5:96 & 5:97 ex rel. New Jersey Council on Affordable Housing*, 221 N.J. 1, 110 A.3d 31 (2015) ("*Mount Laurel IV*"), a full four years prior to the Board's first hearing on JTL's Application.  At the time *Ohad* was decided by this Court, both developers and municipalities seeking relief with respect to affordable housing matters in New Jersey were required to seek relief in an administrative forum, before COAH.  In the *Mount Laurel IV decision*, the New Jersey Supreme Court concluded that COAH was "not capable of functioning as intended by the FHA" when the agency failed to adopt judicially acceptable Third

---

[10] Even at the time of the Court's consideration of a motion to dismiss the federal claims five months after declining to hear the state claims, the Court noted:

> Since the 2004 decision, the parties have entered into settlement agreements, and the Township has sought COAH certification. However, as to the 2007 Mediated Settlement and the Re–Introduced Implementing Ordinance, we cannot conclude that a final determination has been reached, especially considering that the Plaintiff is currently in the process of filing a formal development application for expedited review, pursuant to the 2007 Settlement, . . . .

*Ohad Assocs., LLC v. Twp. of Marlboro*, No. CIV. 10-2183 AET, 2011 WL 310708, at *3 (D.N.J. Jan. 28, 2011).

Round Rules after being given multiple extensions of time, and the Supreme Court directed trial courts to both establish affordable housing obligations for New Jersey's municipalities and certify municipal plans to meet those obligations through declaratory judgment actions.  *Id*. at 19, 24-29.  The Township took advantage of this process, filing a declaratory judgment action on July 7, 2015 entitled *In the Matter of the Township of Jackson, County of Ocean*, Docket No. OCN-L-1879-15 (the "DJ Action").  *See* ECF No. 1 ¶¶ 531-536.

The Township's declaratory judgment action was ultimately settled, and the HEFSP was approved by the Court, as referenced in Count XIV of Plaintiff's Complaint.  An important component of the HEFSP was the Township's proposed development of 290 affordable units in the RG-2 and RG-3 zones.  *Id*. ¶ 539.  Indeed, the Township expressly relied on the development of the 290 affordable units within the RG-2 and RG-3 zones when it entered into the Settlement Agreement and obtained the subsequent issuance of the Judgment of Repose in the Township's DJ Action.  *Id*. ¶ 540.  However, contrary to the terms of the Settlement Agreement, the HEFSP, and the Judgment of Repose, the Board denied JTL's Application seeking approval to develop the Jackson Trails property in the RG-3 zone.  *Id*. ¶ 541.

There is nothing novel or complex about Count XIV.  To the contrary, this Court is not being asked to weigh in on the well-settled *Mt. Laurel* doctrine nor to disturb or reconsider the Settlement Agreement or the related compliance documents.  It is only being asked to decide whether the terms of the Agreement were breached by the same actions that give rise to Plaintiff's federal claims.  Unlike the *Ohad* case, the state law issues in the Township's declaratory judgment case have all been decided, and there is nothing left for this Court (or any court) to decide with regard to the Township's obligations under the *Mt. Laurel* doctrine.  Section 1367(c)(1) therefore provides no basis to avoid such exercise.

28

However, even if this Court should determine that deciding whether a breach of the HEFSP and Settlement Agreement involves a novel or complex issue of state law, the Court must consider the "'values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)); *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig*., 19 F. Supp. 2d 263, 269 (D.N.J. 1998). Most importantly, "this evaluation should be repeated at every stage of the litigation." *Id*. This suit is in the infancy stage, which supports retention of jurisdiction:

> It is a tautology that it is more economical and convenient for the parties to conduct pretrial proceedings before one court, in which discovery can be coordinated, and issues common to each case can be resolved in a consolidated fashion.

*Id.* at 270.

Second, "[u]nless the district court dismisses state claims for persuasive enunciated reasons, the dictates of judicial economy, convenience and fairness to the parties, and comity . . . are better served by recognizing pendent jurisdiction to preserve the advantages of a single suit." *Bisbing v. New Jersey Firemen's Home*, No. CIV. 06-5304 (DRD), 2007 WL 87635 at *4 (D.N.J. Jan. 9, 2007) (quotations and citations omitted). In exercising jurisdiction over New Jersey state law claims, the Court explained:

> [T]he Court cannot decline jurisdiction over the federal law claim, nor can it remand the state claims to state court, because such an action would quite probably result in parallel suits in both the state and federal courts with possibly conflicting opinions. The interests of judicial economy, convenience and fairness to the parties, and comity weigh in favor of a single suit in federal court.

*Id*.

Here, there is one common nucleus of facts--the wrongful denial of JTL's Application for its development--that underlies both actions, and it is likely that Defendants will assert there were other reasons for the denial and breach justifying the Board's actions with respect to both the state and federal claims. Discovery will be needed for all claims. If the two state law counts are refiled

in state court, discovery efforts regarding the <u>same issues</u> (namely, the Defendants' justifications for their actions) will be duplicated in a parallel litigation since discovery is permitted in prerogative writ claims.   N.J. Ct. R. 4:69-4.   Discovery would proceed more efficiently and streamlined in one action, this action.   In the interests of judicial economy, this Court should retain jurisdiction to "permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent. . . ."   *Plaza v. Bernards Twp. Planning Bd.*, No. CV1711466MASLHG, 2018 WL 3637515, at *5 (D.N.J. July 31, 2018).   The convenience of the parties would also be served by having only one litigation and it is certainly not unfair to have the litigants resolve this matter in one forum.   "When making a decision to retain supplemental jurisdiction, a court should consider 'the conservation of judicial energy and the avoidance of multiplicity of litigation.'"   *Fralin v. Cty. of Bucks*, 296 F. Supp. 2d 609, 617 (E.D. Pa. 2003) (citing *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.,* 101 F.3d 1492, 1510 (3d Cir. 1996)).   Counts XIII and XIV flow from the same factual allegations leveled against Defendants as the federal claims.   Defendants nevertheless request that there be two parallel lawsuits involving the same nucleus of facts in two separate courts.   Such a course would result in a waste of judicial resources at great expense to both JTL and the taxpayer-funded public Defendants.   Finally, Defendants have not alleged that Count XIII of JTL's Complaint raises a novel issue requiring dismissal, as it clearly does not.

## CONCLUSION

For the reasons stated herein, JTL respectfully requests that this Court deny Defendants' motion to dismiss in its entirety.

Dated: May 21, 2020                                          Respectfully submitted,

                                                    **STORZER & ASSOCIATES, P.C.**

/s/ Sieglinde K. Rath
Sieglinde K. Rath (#048131991)
Roman P. Storzer, *admitted pro hac vice*
9433 Common Brook Road
Suite 208
Owings Mills, Maryland 21117
rath@storzerlaw.com
Tel: 410.559.6325
Fax: 202.315.3996


**WILENTZ, GOLDMAN & SPITZER, P.A.**

/s/ Donna M. Jennings
Donna M. Jennings (#0172B1995)
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095
djennings@wilentz.com
Tel: 732/855.6039


**HILL WALLACK LLP**

/s/ Thomas F. Carroll, III
Thomas F. Carroll, III (#022051983)
Keith Loughlin (#019212004)
21 Roszel Road
P.O. Box 5226
Princeton, New Jersey 08543-5226
tcarroll@hillwallack.com
Tel: 609.734.6336


*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing together with the Declaration of Sieglinde K. Rath, Esq., dated May 21, 2020 in the above captioned matter have been served upon the following as follows:

**Electronically Filed**

Brent Pohlman
Methfessel & Werbel
2025 Lincoln Highway
Suite 200
P.O. Box 3012
Edison, New Jersey 08818

*Attorney for Defendants*

**STORZER & ASSOCIATES, P.C.**
/s/ Sieglinde K. Rath (#048131991)
Sieglinde K. Rath
9433 Common Brook Road
Suite 208
Owings Mills, Maryland 21117
rath@storzerlaw.com
Tel: 410.559.6325
Fax: 202.315.3996

*Counsel for Plaintiff*