**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JACKSON TRAILS, LLC,

                Plaintiff,

                v.

TOWNSHIP OF JACKSON and PLANNING
BOARD OF THE TOWNSHIP OF
JACKSON,

                Defendants.

Civil Action No. 20-1150 (MAS) (ZNQ)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

      This matter comes before the Court upon Defendants Township of Jackson (the "Township") and Jackson Planning Board's (the "Planning Board") (collectively, "Defendants") Motion to Partially Dismiss Plaintiff Jackson Trails, LLC's ("Plaintiff") Complaint. (ECF No. 11.) Plaintiff opposed (ECF No. 17) and Defendants replied (ECF No. 18). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motion is granted in part and denied in part.

## I.    BACKGROUND[1]

      This case arises from the alleged religious and racial discrimination by Defendants against Plaintiff in connection with the denial of a conditional use, subdivision, and site plan application

---

[1] For the purposes of a motion to dismiss, the Court accepts as true and summarizes the factual allegations of the Complaint. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

1

(the "Application") for a residential housing development (the "Development") that would include 367 single-family homes, 92 multi-family affordable housing units, and a place of worship. (*See* Compl. ¶¶ 1–5, 25, ECF No. 1.) Plaintiff is a developer that owns land designated as Block 23001, Lots 22–29 (the "Property"), in the Township's RG-3 Regional Growth Zone ("RG-3"). (*Id.* ¶¶ 25–26.) Plaintiff's "principal is an Orthodox Jew." (*Id.* ¶ 2.) Plaintiff alleges the Planning Board improperly denied its Application, "bowing to severe anti-Semitic pressure from local residents and fears that Orthodox Jews may purchase homes and reside in the Development, and due to the inclusion in the Development of a house of worship that may be used as a synagogue." (*Id.* ¶ 3.) In response, Plaintiff filed the instant action alleging, among other things, that the Planning Board: (1) acted in an arbitrary, capricious, and unreasonable manner when it denied the Application; and (2) violated a settlement agreement and fair share plan. (*Id.* ¶¶ 501–46.)

A.     **Defendants' Settlement Agreement and HEFSP[2]**

On July 7, 2015, the Township filed a declaratory judgment action in the New Jersey Superior Court, Ocean County, Law Division,[3] seeking a declaration of its compliance with the *Mount Laurel* doctrine,[4] i.e., "the Township's obligation to provide for its fair share of the regional need for low and moderate income housing." (Compl. ¶ 416.) That action was resolved by a settlement agreement (the "Settlement Agreement") entered into between the Township, the Fair

---

[2] Housing Element and Fair Share Plan. (*See* HEFSP, Ex. A to Compl., ECF No. 1-1.) A fair share plan is "an assemblage of maps and documents which set forth the manner in which the town will satisfy its fair share housing obligation." David J. Frizell & Ronald D. Cucchiaro, 36 N.J. Prac., Land Use Law § 21.11 (3d ed., Oct. 2019 Update).

[3] *See In re the Application of the Twp. of Jackson*, Docket No. OCN-L-1879-15.

[4] "The *Mount Laurel* series of cases recognized that the power to zone carries a constitutional obligation to do so in a manner that creates a realistic opportunity for producing a fair share of the regional present and prospective need for housing low- and moderate-income families." *In re Adoption of N.J.A.C. 5:96 and 5:97*, 110 A.3d 31, 33 (N.J. 2015) ("*Mount Laurel IV*").

Share Housing Center, and an intervening developer. (Compl. ¶ 418; *see also* Settlement Agreement Doc. ("SA"), Ex. B to Compl., ECF No. 1-3.)

The Settlement Agreement provides, in relevant part, that the Township has a "Third Round prospective need" obligation of 1250 affordable housing units. (Compl. ¶ 419; SA 3.) To meet that obligation, the Settlement Agreement proposes new construction within the Township along with the requirement that 20% of any construction occurring in certain sites within RG-2 and RG-3, where the Property is situated, be set aside for affordable housing; a total of 281 units. (*See* Compl. ¶ 421; SA 3.) The Complaint appears to allege the Township identified the Property in the Settlement Agreement, for purposes of its Third Round prospective need obligation, and proposed that the Property "include development of 367 units, 92 units of which would be set-aside" for affordable housing.[5] (*See* Compl. ¶¶ 421–23.)

On December 31, 2016, the Superior Court approved the Settlement Agreement, finding that it "fair[ly] and adequately protects the interests of low and moderate-income persons within Jackson's housing region." (Compl. ¶ 424; *see also* Superior Ct. Order 2, Ex. D to Compl., ECF No. 1-5.) The Superior Court then directed the Township to submit a finalized HEFSP addressing its *Mount Laurel* obligations for court approval. (Compl. ¶ 425; Superior Ct. Order 2.) The Township's HEFSP contains a compliance plan that, like the Settlement Agreement, provides that the Township has a Third Round obligation of 1,250 units with 20% set-aside requirement for developments constructed in certain sites within RG-2 and RG-3; the total amount of units rose to

---

[5] While referring to the Settlement Agreement, the Complaint provides a table entitled "Regional Growth Zone Potential Development Summary" in which the Property is identified for a proposed development including 367 single-family homes and 92 affordable housing units. (Compl. ¶ 421.) That table does not appear in the Settlement Agreement. (*See generally* SA.) Moreover, no such identification or proposal is apparent on the face of the Settlement Agreement.

3

290.[6] (Compl. ¶¶ 427–28; HEFSP 11, 27.) On August 16, 2017, the Superior Court entered a judgment of compliance and repose ("JCR") finding that the Township's HEFSP "adequately meets," and "constitutes an appropriate means to fully satisfy," the Township's *Mount Laurel* obligations. (Compl. ¶ 430; *see* Superior Ct. JCR 6, Ex. C to Compl., ECF No. 1-4.).

### B.    The Planning Board Denies Plaintiff's Application

On August 10, 2018, Plaintiff submitted the Application to the Planning Board seeking conditional use, subdivision, and site plan approval for the Development. (Compl. ¶¶ 77, 223.) Plaintiff alleges that "[i]n making its determination, the [Planning] Board relied in great part on the testimony of objecting Township residents and the comments and questions of [Planning] Board members" that arose at the two hearings held on the Application. (*Id.* ¶ 243.)

During the first hearing, held on August 19, 2019, Planning Board officials inquired about the intended use of basements in single-family homes, which Plaintiff claims is due to a "concern[] that members of the Orthodox Jewish community would illegally use their basements as rentals for other Orthodox Jews." (*Id.* ¶¶ 111–22.) An inquiry also arose as to whether rental units would be used as dormitories, which the Township banned in an alleged effort to "prevent[] boarding schools, or yeshivas, for the Orthodox Jewish community in the Township." (*Id.* ¶¶ 121–23.) Township residents raised similar questions, and further inquired into issues concerning the house of worship, private schooling, and bussing. (*Id.* ¶¶ 127–33.)

The Planning Board held the second hearing on October 7, 2019. (*Id.* ¶ 134.) At its commencement, the Planning Board was advised by its attorney not to consider a Planning Board member's e-mail correspondence in which he opposed Plaintiff's Application. (*Id.* ¶¶ 135–39.)

---

[6] Also like the Settlement Agreement, the HEFSP does not appear to identify the Property (*see generally* HEFSP); the Complaint does not allege otherwise (*see* Compl. ¶¶ 426–28).

That same Planning Board member, who is also a member of the Township's Environmental Commission,[7] allegedly posted a purportedly anti-Semitic comment online. (*Id.* ¶ 140.) At Plaintiff's request, the Planning Board member recused himself and the hearing proceeded without him. (*Id.* ¶ 143.) During the public comment period, the Planning Board's attorney admonished a Township resident who inquired about the nature of the house of worship, stating that the issue had no bearing on Plaintiff's Application. (*Id.* ¶¶ 177–79.) That same resident allegedly made anti-Semitic comments on Facebook, in e-mail correspondence to Township officials, and during other Township meetings. (*Id.* ¶¶ 180–84.) The Planning Board attorney similarly admonished other Township residents who commented on bussing of the children to schools. (*Id.* ¶¶ 186–191.) The Planning Board sought to adjourn the matter, which Plaintiff opposed. (*Id.* ¶¶ 201–03.) By a 4-4 vote, the Planning Board denied Plaintiff's Application.[8] (*Id.* ¶¶ 205–06.) Plaintiff moved for reconsideration. (*Id.* ¶ 211.)

On December 2, 2019, the Planning Board adopted Resolution 2019-31 (the "Resolution") denying Plaintiff's Application. (*Id.* ¶ 214; *see generally* Resolution Doc., Ex. E to Compl., ECF No. 1-6.) Plaintiff alleges the Resolution provides pretextual justifications for denying its Application. First, the Resolution states that there are unresolved questions concerning the Application's impact on the Joint Military Base of McGuire-Dix-Lakehurst, which Plaintiff claims is pretextual because the military base is an off-site condition that is not within the Planning Board's jurisdiction. (Compl. ¶¶ 217–18.) The Resolution also states that the Planning Board

---

[7] The Environmental Commission reviews and provides recommendations on "any application for development in the Township." (Compl. ¶ 251.)

[8] A tie vote results in the denial of an application under the Planning Board's rules. (Compl. ¶ 206; Pl.'s Opp'n Br. 8.)

expressed concerns over Plaintiff's Environmental Study and Traffic Study, which Plaintiff claims is pretextual because it submitted appropriate documents and because the issues raised are also not within the Planning Board's jurisdiction. (*Id.* ¶¶ 229–38.) The Resolution further states that Plaintiff would not consent to the Planning Board's request for additional time to review the evidence and "would not consent to any further adjournments, did not want to present or permit any additional testimony or allow any additional public comment." (*Id.* ¶ 220.) Plaintiff avers it was "not obligated to consent" and was entitled to a Board vote and approval on its Application pursuant to the New Jersey Municipal Land Use Law ("MLUL"), N.J. Stat. Ann. §§ 40:55D-1, *et seq.* (*Id.*)

The Resolution also addressed Plaintiff's motion for reconsideration, stating the "motion reargued, essentially, questions of law, and again, [Plaintiff] did not agree therein to permit any additional information to be provided to the Board." (Resolution Doc. 8.) The Board published notice of its decision in a local newspaper on December 21, 2019. (Compl. ¶ 242.)

On February 3, 2020, Plaintiff filed the instant fourteen-count Complaint alleging: Counts One through Four for violations of the Fairing Housing Act ("FHA"), 42 U.S.C. §§ 3604, 3617 (Compl. ¶¶ 461–80); Count Five for violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.* (*id.* ¶¶ 481–82); Counts Six through Ten for violations of the First and Fourteenth Amendments of the United States Constitution (*id.* ¶¶ 483–94); Count Eleven for violations of 42 U.S.C. § 1982 (*id.* ¶¶ 495–97); Count Twelve for violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1, *et seq.* (*id.* ¶¶ 498–500); Count Thirteen for arbitrary and capricious denial of the Application contrary to the MLUL (*id.* ¶¶ 501–29); and Count Fourteen, which is characterized as violation of the HEFSP and the Settlement Agreement (*id.* ¶¶ 530–546).

6

On March 13, 2020, Defendants filed the present Motion, seeking dismissal of Counts Thirteen and Fourteen for lack of subject matter jurisdiction and failure to state a claim. (Defs.' Moving Br. 13, ECF No. 11-3.) That same day, Defendants answered the other counts of the Complaint. (ECF No. 12.)

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(1)[9]

Because federal courts are courts of limited jurisdiction, the party seeking to invoke the Court's jurisdiction bears the burden of proving the existence of subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). On a facial attack, the Court considers only the allegations of the complaint and documents referenced therein, construing them in the light most favorable to the plaintiff. *Id.* On a factual attack, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### B.   Rule 12(b)(6)

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a

---

[9] All references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "[review] the complaint to strike conclusory allegations." *Id.* The court must accept as true all the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

## III.   DISCUSSION

### A.   Count Thirteen

Defendants argue this Court lacks subject matter jurisdiction over Count Thirteen because Plaintiff "failed to exhaust judicial remedies" by not appealing the Planning Board's decision to the state court via an action in lieu of prerogative writs. (Defs.' Moving Br. 10,16–25.) Defendants seem to also argue that, for the same reason, Count Thirteen is not ripe for federal court review. (*See* Defs.' Moving Br. 20–21 (In addressing ripeness, Defendants posit that "the decision of the

planning board is appealable to the Superior Court and thus is not final."). Defendants alternatively argue Count Thirteen fails to state a plausible claim for relief due to Plaintiff's "conclusory allegations that their [A]pplication was denied based on a perceived undercurrent of alleged anti-Semitism." (*Id.* at 13.) In opposition, Plaintiff argues it exhausted the required administrative remedies and the Court has supplemental jurisdiction over Count Thirteen, which is sufficiently pled. (Pl.'s Opp'n Br. 18–19, ECF No. 17.)

### 1.   The Court Has Supplemental Jurisdiction Over Count Thirteen[10]

The applicable exhaustion requirement is found in New Jersey Court Rule 4:69-5, which provides that "except where it is manifest that the interest of justice requires otherwise," actions in lieu of prerogative writs "shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted." N.J. Ct. R. 4:69-5; *See Congregation Kollel, Inc. v. Twp. of Howell*, No. 16-2457, 2017 WL 637689, *3, 12 (D.N.J. Feb. 16, 2017) (applying New Jersey Court Rule 4:69-5's exhaustion of administrative remedies requirement where the plaintiffs challenged the validity of an ordinance following the denial of their land use application); *see also Mendez v. Port Auth. of N.Y. & N.J.*, No. 14-7543, 2017 WL 1197784, at *10 (D.N.J. Mar. 31, 3017) ("[A] plaintiff must exhaust administrative remedies before bringing an action in lieu of prerogative writ."). An action in lieu of a prerogative writ "permits a 'court [to] set aside a municipal board decision if it is shown to be arbitrary, capricious or unreasonable, not supported in the evidence, or otherwise contrary to law.'" *Nat'l Amusements*

---

[10] While the Complaint refers to Count Thirteen as "Arbitrary and Capricious Denial of Land Use Application," it is effectively a state law claim for an action in lieu of prerogative writ. The parties do not appear to argue otherwise. (*See* Defs.' Moving Br. 24–27; *see* Pl.'s Opp'n Br. 18.)

*Inc. v. Borough of Palmyra*, 716 F.3d 57, 63 (3d Cir. 2013) (quoting *Rivkin v. Dover Twp. Rent Leveling Bd.*, 671 A.2d 567, 581 (N.J. 1996)).

Here, Plaintiff exhausted administrative remedies by obtaining the Board's final decision, which the Board then adopted in the Resolution and published notice thereof.[11] *Edison Bd. of Educ. v. Zoning Bd. of Adjustments of Edison Twp.*, 2020 WL 4196496 (N.J. Super. Ct. App. Div. July 22, 2020) ("[A] party seeking the court's review of a 'determination of a planning board . . . must commence [an] action in lieu of prerogative writs."); *see also* N.J. Ct. R. 4:69-6 (an action in lieu of prerogative writs to review a planning board's decision must be commenced within forty-five days of the decision's publication). And, contrary to Defendants' suggestion, actions in lieu of prerogative writs can be brought in federal court. *See Acad. Hill, Inc. v. City of Lambertville*, No. 19-426, 2020 WL 3642694, *8 (D.N.J. July 6, 2020) ("Defendants' argument that Plaintiffs are required to assert this [inverse-spot zoning] claim in state court is unavailing. This Court has previously exerted supplemental jurisdiction over state claims alleging an ordinance is arbitrary, capricious, and unreasonable under the [MLUL]."). The Court, accordingly, finds Plaintiff exhausted administrative remedies and may file an action in lieu of prerogative writs in federal court.[12]

---

[11] Defendants provide no applicable legal authority to support the proposition that a party must exhaust "judicial remedies" prior to filing an action in lieu of prerogative writs in federal court. Instead, Defendants primarily cite cases addressing the legal standard—not exhaustion requirement—for due process claims. Defendants have not, however, moved to dismiss Plaintiff's due process claims in the instant motion. (*See* Defs.' Moving Br. 16–23.)

[12] To the extent Defendants argue Count Thirteen is not ripe for judicial review, such argument fails in part because Plaintiff obtained a final decision from the Plaintiff Board. *See Felmeister v. Off. of Attorney Ethics*, 856 F.2d 529, 535 (3d Cir. 1988) ("With regard to administrative agency actions, considerations of ripeness reflect the need to protect those agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." (internal quotations and citation omitted)).

Any challenge to the Court's jurisdiction, therefore, should have been premised on supplemental jurisdiction. Although Defendants do not challenge the Court's supplemental jurisdiction over Count Thirteen, the Court must still consider whether it has jurisdiction over such claim. *See Bracken v. Matgouranis*, 296 F.3d 160, 162 (3d Cir. 2002).

"[I]n any civil action of which the district courts have original jurisdiction, the district court[] shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." § 28 U.S.C. 1367(a). There are three requirements for supplemental jurisdiction: (1) the "federal claim must have substance sufficient to confer subject matter jurisdiction on the court"; (2) "the state and federal claims must derive from a common nucleus of operative facts"; and (3) the claims must be such that they "would ordinarily be expected" to be tried in one judicial proceeding. *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). The party seeking to invoke the Court's jurisdiction bears the burden of establishing the existence of supplemental jurisdiction. *Korrow v. Aaron's Inc.*, No. 10-6317, 2015 WL 7720491, at *5 (D.N.J. Nov. 30, 2015).

Here, Count Thirteen satisfies the three requirements outlined in *Lyon*. That is, Plaintiff's federal claims have substance sufficient to confer subject matter jurisdiction on the court. (Compl. ¶¶ 461–97.) Plaintiff's federal claims and Count Thirteen derive from the same nucleus of operative facts: the Planning Board's denial of Plaintiff's Application. For the same reason, those claims would ordinarily be expected to be tried in one judicial proceeding. *See MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995) ("logic and prudent use of judicial resources dictate that these claims[, which arise from the same fraudulent activity,]

11

be tried in one judicial proceeding"). The Court, therefore, has supplemental jurisdiction over Count Thirteen.

### 2. Count Thirteen Raises a Plausible Claim for Relief

Defendants argue, in a cursory manner, that Count Thirteen fails to state a cause of action. (Defs.' Moving Br. 12–14, 19.) Defendants further contend that the Planning Board's decision was not arbitrary, capricious, or unreasonable. (*Id*. at 26–27.)

"The MLUL is a carefully constructed and comprehensive framework governing the powers of municipalities relating to land use and development." *N.J. Shore Builders Ass'n v. Twp. of Jackson*, 972 A.2d 1151, 1153 (N.J. 2009). The MLUL "grant[s] power to local planning boards to review and approve" land use applications "and require[s] ordinances that contain provisions for an application process for development." *See Lakeview Mem'l Park Ass'n v. Burlington Cnty. Constr. Bd. of Appeals*, 232 A.3d 529, 537 (N.J. Super. Ct. Law Div. 2019); *see* N.J. Stat. Ann. § 40:55D-38. The challenging party bears the burden of demonstrating the planning board's decision was arbitrary, capricious, or unreasonable. *Rivkin*, 671 A.2d at 581. While courts "will give substantial deference to findings of fact, it is essential that the board's actions be grounded in evidence on the record." *Fallone Props., LLC v. Bethlehem Twp. Planning Bd.*, 849 A.2d 1117 (N.J. Super. Ct. App. Div. 2004).

Here, Plaintiff alleges it submitted a "fully conforming Application" to the Planning Board that should have been approved. (*See* Compl. ¶¶ 505–09, 527–28.) Plaintiff asserts it submitted a substantial number of supporting documents and presented the testimony of various expert witnesses. (*Id*. ¶¶ 512–13.) According to Plaintiff, the Planning Board nevertheless denied its Applications without "any lawful justification." (*Id*. ¶ 528.) Plaintiff claims the Planning Board

12

denied its Application based on the "severe anti-Semitic pressure from local residents" to do so. (*Id.* ¶ 3.) Planning Board allegedly relied in part "on the testimony of objecting Township residents and the comments and questions of Board members," including issues concerning the house of worship, intended use of basements, private schooling, and bussing. (*Id.* ¶¶ 111–90, 243.) Plaintiff posits the Planning Board provided pretextual justifications for denying the Application because the purported concerns raised by the Planning Board were matters outside of its jurisdiction. (*Id.* ¶¶ 217–38.) Defendants, notably, do not dispute Plaintiff's contention that those matters were outside of its jurisdiction but rather, in justifying denial of the Application, seem to rely on a purportedly outdated environmental study provided by Plaintiff and Plaintiff's refusal to allow the Planning Board more time to review the evidence. (*See* Defs.' Moving Br. 1–2, 26–27.)

Drawing all reasonable inferences in Plaintiff's favor, the Court finds Count Thirteen sufficiently alleges Planning Board acted in an arbitrary, capricious, or unreasonable manner when it denied Plaintiff's Application. The Court, at this juncture, will not address the merits of the underlying claim. *See In re Ins. Brokerage Antitrust Litig.*, No. 1663, 2007 WL 1062980, at \*3 (D.N.J. Apr. 5, 2007) ("[T]he purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."). Because Count Thirteen is sufficiently pled, the Court will exercise supplemental jurisdiction over that claim. Defendants' Partial Motion to Dismiss, to the extent it seeks dismissal of Count Thirteen, is therefore denied.

### B.    The Court Declines to Exercise Supplemental Jurisdiction Over Count Fourteen

Relying on *Ohad Associates. v. Township of Marlboro*, No. 10-2183, 2010 WL 3326674 (D.N.J. Aug. 23, 2010), Defendants argue this Court lacks supplemental jurisdiction over Count Fourteen because Plaintiff's claim—an alleged violation of the *Mount Laurel* doctrine—raises "a complex issue of state law" that should be resolved in state court. (Defs.' Moving Br. 28–31.)

In opposition, Plaintiff characterizes Count Fourteen as a breach of contract claim, asserting that "any 'novel or complex issues' have already been addressed by the state courts." (Pl.'s Opp'n Br. 21 ("the only issue here is whether Defendants breached their Settlement Agreement and their HEFSP").) Moreover, Plaintiff contends *Ohad* is "easily distinguish[able]" because in that case the district court declined to exercise supplemental jurisdiction due to the "ongoing involvement of [Council on Affordable Housing ("COAH")]."[13] (*Id.* at 26–27.)

Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The district court may decline to exercise supplemental jurisdiction over a state-law claim if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In determining whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ.*, 484 U.S. at 350).

Before reviewing the *Ohad* decision, the Court notes Count Fourteen does not set forth a simple breach of contract claim because the alleged violations of the Settlement Agreement and HEFSP necessarily implicate the *Mount Laurel* doctrine. Plaintiff alleges, for example, that the

---

[13] The COAH "was designed to [p]rovide an optional administrative alternative to litigating constitutional compliance through civil exclusionary actions." *Mount Laurel IV*, 110 A.3d at 33. Finding the COAH moribund, the New Jersey Supreme Court ordered that "the courts may resume their role as the forum of first resort for evaluating municipal compliance with *Mount Laurel* obligations." *Id.* at 35.

14

Planning Board's denial of its Application "violate[s] the Township's *Mount Laurel* obligations pursuant to the Settlement Agreement and the JCR," "which required implementation of the HEFSP." (Compl. ¶¶ 538, 546.) Indeed, Plaintiff asserts it "has standing to enforce [the Settlement] [A]greement and HEFSP" pursuant to a state court case that held "any individual demonstrating an interest in, or any organization that has the objective of, securing lower housing opportunities in a municipality *will have standing to sue such municipality on Mount Laurel grounds*." (Pl.'s Opp'n Br. 11. (emphasis added) (citing *S. Burlington Cnty. N.A.A.C.P. v. Mount Laurel Twp.*, 456 A.2d 390, 483 (N.J. 1983).) The Court, therefore, finds Count Fourteen involves an alleged violation of the *Mount Laurel* doctrine.

In *Ohad*, the plaintiff applied to the planning board for approval to construct a development. 2010 WL 3326674, at *1. After the board denied the application, the plaintiff filed a lawsuit in state court, alleging the board's decision violated a consent judgment previously entered against the township. According to the plaintiff, that judgment had identified plaintiff's property, among others, for development to meet the township's *Mount Laurel* obligations. *Id.* at *1–2. The township, meanwhile, sought COAH's approval for a proposed compliance plan. *Id.* at *2. The plaintiff objected to that proposal. *Id.* The parties engaged in mediation that ultimately resulted in an unconsummated settlement agreement. *Id.* at *2. The plaintiff then filed the underlying *Ohad* action against the township and the board (among others) in state court, in part alleging violations of the consent order and settlement agreement. The defendants removed the matter to federal court and the plaintiff moved to remand. *Id.* at *2.

In declining to exercise supplemental jurisdiction, the district court did not base its decision on the ongoing involvement of COAH despite Plaintiff's assertion to the contrary. Rather, the district court rejected the plaintiff's argument that the court should abstain because there "were

ongoing proceedings before COAH involving the [d]efendants' *Mount Laurel* obligations and that [the] [p]laintiff [was] participating in those proceedings." *Id.* at *4. Instead, the district court declined jurisdiction because it concluded that the plaintiff's claims "raise[d] a complex issue of state law that ought to be remanded to the New Jersey state courts for resolution." *Id.* at *6. The district court explained that "the designation of a specialist judge in each region who handles all of that region's *Mt. Laurel* claims speaks to th[e doctrine's] complexity, as does the intricacy of the housing-plan approval process." *Id.* at *6. Consequently, the court cautioned that "[a] federal court that opts to decide a *Mt. Laurel* claim not only risks making a substantive legal error, but also intrudes upon" a "process that has been entrusted to state court judges[.]" *Id.* at *6.

Plaintiff contends that even though Count Fourteen presents a complex issue of state law, the Court should nevertheless retain jurisdiction because otherwise there will be "two parallel lawsuits involving the same nucleus of facts in two separate courts." (Pl.'s Moving Br. 29–30.) The Court recognizes that considerations of convenience and judicial economy weigh in favor of retaining jurisdiction. Principles of comity, however, outweigh these concerns. "The New Jersey courts are critical actors in the *Mt. Laurel* system" that "have developed and implemented a complex, fact-intensive process for carrying out the New Jersey Supreme Court's mandate, and they continue to develop and implement that process today." 2010 WL 3326674, at *6.

The district court's reasoning in *Ohad* for declining jurisdiction applies with equal force here. The Court finds that Count Fourteen is not a simple breach of contract claim and necessarily implicates the *Mount Laurel* doctrine. Moreover, the principles of comity outweigh Plaintiff's concerns of pursuing parallel suits. The Court also notes that, unlike in the parties in *Ohad,* Plaintiff was not a party to the Settlement Agreement. Nor does the Settlement Agreement or HEFSP appear

to identify Plaintiff's Property, much less address a proposal for development.[14] The Court, accordingly, declines to exercise supplemental jurisdiction over Count Fourteen.[15] Defendants' Partial Motion to Dismiss, to the extent it seeks dismissal of Count Fourteen, is therefore granted.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Partial Motion to Dismiss is granted in part and denied in part. The Court will enter an Order consistent with this Memorandum Opinion.


_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[14] While identifying other developers for the Township's Third Round prospective need obligations, the Settlement Agreement and HEFSP appear to only refer to Plaintiff and/or the Property to the extent the documents identify RG-3, where Plaintiff's Property is situated. (*See* HEFSP 27; *see* SA 3.)

[15] Because the Court declines to exercise supplemental jurisdiction over Count Fourteen, the Court does not reach the merits of the parties' remaining arguments.