## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement"), dated as of March 28, 2022 (the "Effective Date") memorializes an agreement to settle litigation by and between Jackson Trails LLC, Jackson 222324 LLC, Jackson Farms LLC, Jackson Run LLC, Jackson Walk LLC, and Lakewood Investments, LLC, all with a business address at 305 Main Street, Lakewood, New Jersey (collectively "Plaintiffs" or "Developer") and the Planning Board of the Township of Jackson, New Jersey ("Planning Board"), a municipal agency organized pursuant to N.J.S.A. 40:55D-23 with its principal place of business at 95 West Veterans Highway, Jackson, New Jersey, and the Township of Jackson, New Jersey ("Township"), a municipal corporation located in the State of New Jersey, having offices at 95 West Veterans Highway, Jackson, New Jersey (collectively, "Defendants"). Plaintiffs and  Defendants  are referred to herein collectively as the "Parties."

### RECITALS

**WHEREAS,** on August 10, 2018, Plaintiff, Jackson Trails, LLC, applied to the Planning Board seeking conditional use approval, preliminary and final major subdivision approval, and preliminary and final major site plan approval for a residential housing development on property identified as Block 23001, Lots 22-29 on the tax map of the Township (the "Property") which would include 367 single-family homes and 92 multi-family units, and a house of worship on the Property (the "Application"); and

**WHEREAS,** public hearings on the Application were conducted by the Planning Board on August 19, 2019 and October 7, 2019 at which time the Planning Board denied  the

Application; and a Motion for Reconsideration was heard at a December 2, 2019 meeting before the Planning Board, but the Planning Board failed to act on same; and

**WHEREAS,** on December 2, 2019, the Planning Board instead issued a written resolution memorializing its decision to deny the Application and all requested conditional use, preliminary and final major subdivision and preliminary and final major site plan relief on October 7, 2019 by virtue of a 4-4 vote on said Application; and

**WHEREAS**, on February 3, 2020, the Plaintiffs filed a complaint against Defendants in the United States District Court for the District of New Jersey (the "Court") captioned *Jackson Trails, et al v. Township of Jackson, et al*., Civil Action No.3:20-cv-01150 (the "Action"); subsequently amended on February 5, 2021; and

**WHEREAS**, in the Action, Plaintiffs asserted claims against Defendants for violations of the Free Exercise and Establishment Clauses of the First Amendment of the United States Constitution; the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution; 42 U.S.C. § 1982; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.*, and New Jersey law, arising from the Planning Board's denial of the Application; and

**WHEREAS**, on March 13, 2020, Defendants filed a Motion to Dismiss Counts XIII and XIV of the Plaintiffs' Complaint, and on October 9, 2020, the Court entered an Order dismissing Count XIV of Plaintiffs' Complaint; and

**WHEREAS**, Defendants filed an Answer to Plaintiffs' Complaint on March 13, 2020 and an Amended Answer on October 29, 2020; and

**WHEREAS**, Defendants deny all liability for the claims asserted by Plaintiffs; and

**WHEREAS**, the Parties have determined to resolve all aspects of this litigation and agree that all claims should be resolved amicably and without protracted, expensive and unnecessary litigation; and

**WHEREAS**, the Parties agree that the Application heard by the Planning Board was a fully complying application for conditional use approval, preliminary and final major subdivision approval, and preliminary and final major site plan approval for the use of the Property pursuant to the Township Code; and

**WHEREAS**, the Parties have agreed to the land use terms set forth herein; and

**WHEREAS**, the Parties, after an opportunity to consider and to confer with counsel of their choice, have reached a voluntary agreement with respect to the disputed issues, and with a full understanding of the terms of this Agreement, desire to memorialize their settlement herein; and

**WHEREAS**, each of the Parties have authority to legally bind and enter into legal agreements on behalf of their respective agencies and to require their respective agencies to adhere to the provisions of this Settlement Agreement as specified herein;

**WHEREAS**, the Parties agree to the terms of and entry of this Settlement Agreement, as indicated by their signatures below,

**NOW, WHEREFORE**, in consideration of the foregoing premises and the releases, terms of settlement, and covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

## TERMS OF AGREEMENT

1. **<u>Settlement Payment</u>**. The Defendants will pay Plaintiffs a total of Seven Hundred Thousand Dollars ($700,000.00) ("Settlement Payment"), inclusive of attorney's fees and costs. Plaintiffs agree that Plaintiffs will not seek any additional monetary compensation, including any other payment from the Defendants. A wire transfer or certified check shall be made payable to "Storzer and Associates, P.C. – Attorney Trust Account" in the amount of Seven Hundred Thousand Dollars ($700,000.00). If the Township or Planning Board fails to approve this Settlement Agreement and adopt memorializing Resolutions as discussed below, the Settlement Agreement is void, no Settlement Payment will be made and the Parties will return to litigation. In that event, neither the proposed settlement nor any of the negotiations leading to the proposed settlement shall be deemed admissible against either Plaintiffs or Defendants, and Plaintiffs shall have the right to pursue the Lawsuit in the United States District Court for the District of New Jersey subject to all of the defenses available to Defendants. If the Defendants approve the Settlement Agreement and adopt the memorializing Resolutions discussed below in Paragraph 6, Defendants will issue the Settlement Payment to Plaintiffs within thirty (30) days of such memorialization of such approvals.

   As partial consideration for the Release, Plaintiffs will release the Defendants as set forth in Paragraph 11 herein. Notwithstanding anything in this Paragraph 1 or any other provision of this Agreement, however, any releases provided pursuant to the terms of this Agreement will be void and unenforceable in all respects if the Planning Board does not approve the form of application as set forth in **Schedule B** hereto (the "Final Application") in its entirety at the *Whispering Woods* hearing (defined in Paragraph 4,

below) and adopt a Resolution memorializing its decision (as also set forth in Paragraph 4). In the event that the Planning Board does not approve the Final Application as depicted on **Schedule B** in its entirety at the *Whispering Woods* hearing or does not adopt a resolution memorializing its decision as described in Paragraph 4 herein and/or the Township fails to adopt the Ordinance as provided for in Paragraph 3 herein, the Parties shall return to litigation.

2. **Land Use Terms.** The parties agree that the Plaintiffs' proposed use of the Property shall consist of two phases as described in this Agreement. During the first phase, the Plaintiffs shall be permitted to use the Property as depicted on **Schedule A** for residential housing consisting of 367 single-family homes, 92 multi-family units, a house of worship and all related improvements. During the second phase, and following the *Whispering Woods* hearing described in Paragraph 4 below, the Parties agree that Plaintiffs shall be permitted to use the Property as depicted on the Final Application and **Schedule B** for residential housing consisting of 386 single-family homes, 96 multi-family units, a house of worship and all related improvements (**Schedule A** and the Final Application as depicted on **Schedule B** shall collectively be referred to as the "Development"). The Parties further agree to comply with the following terms related to both phases of the Development by Plaintiffs:

   a. Upon execution of this Settlement Agreement, Plaintiffs shall not be required to obtain any additional relief from the Township's ordinances in order to construct and operate the Development on the Property in accordance with **Schedule A** and the Land Use Terms contained herein.

b.  Plaintiffs shall submit **Schedule A** and the Final Application as depicted on **Schedule B**, together with any and all other required plans, reports, studies, etc., to the appropriate agencies if required, including, but not limited to the (i) Jackson Township Municipal Utilities Authority ("Jackson MUA"), (ii) Manchester Township Utilities Department, (iii) New Jersey Department of Environmental Protection, (iv) Ocean County Planning Board, (v) Ocean County Utilities Authority, (vi) Pinelands Commission, (vii) Jackson Township Bureau of Fire Prevention, (viii) Ocean County Soil Conservation District, and (ix) Ocean County Health Department. Upon receipt of approval by such agencies, Plaintiffs shall provide a copy of any permit or written evidence of approval to the Planning Board or its professional staff.

c.  The Township shall waive any and all building permit fees, including but not limited to, building, fire, mechanical, electrical, plumbing and other like fees paid to the Township, for the residential (market and affordable) units up to the amount of One Million Five Hundred Thousand ($1,500,000.00) Dollars. There shall be a drawdown on this waiver amount as the units are constructed. The parties agree that this waiver does not include any permit fees due to the State of New Jersey Department of Community Affairs or any other state or county entity and the Jackson MUA , which the Plaintiffs will assume.

d.  The Township shall take all reasonable and necessary steps to expedite the review, approval and/or inspection of Plaintiffs' Development so as not to delay the construction of Plaintiffs' Development.

e.  Plaintiffs shall have the exclusive right to install private wells in the Development, in lieu of connection to the public water system. Plaintiffs will obtain a water

allocation/diversion permit, if needed, from the NJDEP.

f.  To ensure an expeditious review process the following conditions shall be imposed:

    i.  The Township Engineering Department will provide the Engineer's cost estimate for purposes of bonding, and the establishment of inspection escrows within 21 days after submission of final plans as attached hereto as **Schedule A**.

    ii.  The Township Building Department and Subcode official, within 21 days of submittal of each building permit application, will provide for:

        1.  Issuance of phased building permit for site work (if there is a Site Work Permit required);

        2.  Footings & Foundation and Building Shell Permits;

        3.  Design/Build Mechanical, Electrical and Plumbing (to follow shell);

        4.  Street Opening Permits (if required).

    iii.

        1.  If any of the above applications for said permits are deemed deficient, the Township shall re-review within five (5) days of submission of a corrected application.

        2.  Timely response for requested inspections (within five (5) business days of such request).

        3.  If any inspections fail, the Township shall reinspect within five (5) business days of Plaintiffs' request for the same.

7

4. In the event that the Township's representatives fail three (3) times or more to meet the deadlines set forth in this Paragraphs f. ii. and iii. above, the Plaintiffs shall be permitted to file for relief in Court, including, but not limited to, a Motion in aid of litigant's rights and request that the Township pays any attorney's fees and costs associated with said filing.

g. If Plaintiffs require any modifications to **Schedule A** or the Final Application as depicted on **Schedule B**, other than those modifications that are considered *de minimis*, *i.e.*, field changes agreed to by the Parties, Plaintiffs shall submit a new development application to the appropriate municipal land use board pursuant to the Municipal Land Use Law ("MLUL") (N.J.S.A. 40:55D-1, *et seq*.).

h. Plaintiffs shall provide a statement from the Jackson Township Tax Collector that all taxes are paid in full as of the date of this Settlement Agreement. The Township shall not be required to issue any permit in the event the taxes are delinquent for any portion of the Development.

i. Plaintiffs shall submit an electronic file of **Schedule A** and **Schedule B** containing the entire site and lot layout.

j. Plaintiffs shall ensure that all escrow fees for Planning Board professionals are current. In the event that any escrow fees are not current, then inspections shall not take place.

k. Plaintiffs' materials, methods of construction and details shall be in conformance with the engineering and building requirements of the Township of Jackson at the time of submission of Plaintiffs' application (*i.e.*, August 10, 2018).

l. Prior to the Township releasing the mylar map or maps for filing, Plaintiffs shall

furnish the Township Clerk with a cash bond and performance guarantee in an amount to be determined by the Township Engineer per phase. For example, the cash bond and performance guarantee based on the engineer's cost estimate for Phase I shall be posted first with the other phases to follow. No permit shall be required to be issued unless or until a cash bond or performance guarantee has been deposited for that phase for any work to be performed in that phase.

m. Plaintiffs shall post an inspection fee per phase with the Township Clerk in an amount to be determined by the Township Engineer pursuant to N.J.S.A. 40:55D-53. No inspection shall be required to be performed unless or until a cash bond or performance guarantee has been deposited for that phase for any work to be performed in that phase.

n. The Parties acknowledge that the Development includes streets and stormwater detention basins. The Township shall accept the dedication and maintenance of the same without further cost to Plaintiffs. The Defendant Township specifically acknowledges that it is waiving the stormwater management maintenance fee required pursuant to Township Ordinance 244-12K.

o. The Parties acknowledge that Plaintiffs have provided drainage calculations confirming the on-site stormwater management system has been designed in accordance with Residential Site Improvement Standards as represented by Plaintiffs' engineer during the public hearing applicable as of August 10, 2018.

p. Plaintiffs have provided the Township with an "Operations and Maintenance Manual" for the proper and effective operation and maintenance of all storm water management systems pursuant to N.J.A.C. 7:8-5.8.

q. The Parties agree that a homeowners association is not proposed or required for

the single family lots because the Development does not include any common areas. Each single family homeowner shall be responsible for the maintenance of their individual lots. However, Plaintiffs or their successors in interest shall be responsible for the maintenance of the affordable housing parcel. The Township shall be responsible for the maintenance of the streets and stormwater basins throughout the Development. The Developer shall accept responsibility and/or set up a Home Owner's Association to ensure the proper maintenance of the cisterns if the MUA and/or the Fire District will not accept responsibility for the same. If applicable, the HOA documents shall be reviewed and approved by the Township attorney.

r.   Plaintiffs shall enter into an Agreement with the Affordable Housing liaison to implement the Affordable Housing component pursuant to the Uniform Housing Affordability Controls regulations, N.J.A.C. 5:80-26.1, *et seq.* Plaintiffs shall set-aside 20% of the housing units for affordable housing (96 overall units).

**Affordable Housing Requirements.** Developer shall satisfy the affordable housing obligation required in connection with the overall development by setting aside for very low-, low- and moderate-income households no fewer than twenty percent (20%) of all residential units developed as described herein (the "*Affordable Units*").

Because the entire development shall consist of four-hundred-and-eighty-two (482) total residential units (combining market-rate and Affordable Units), there shall be at least ninety-six (96) Affordable Units.

All of the Affordable Units shall be non-age-restricted family units (either

10

rental or for sale) and shall fully comply with the Uniform Housing Affordability Controls, N.J.A.C. 5:80-26.1, et seq. ("*UHAC*"), with the sole exception that thirteen percent (13%) of the Affordable Units within each bedroom distribution shall be required to be for very low income households earning thirty percent (30%) or less than the median income pursuant to the Fair Housing Act, N.J.S.A. 52:27D-301, et seq. ("*FHA*").

Of the ninety-six (96) Affordable Units, there shall be sixty-six (66) 3-bedroom units and thirty (30) 2-bedroom units. The income distribution of the Affordable Units shall be as follows:

Of the sixty-six (66) 3-bedroom units, there shall be nine (9) very-low-income units, twenty-four (24) low-income units, and thirty-three (33) moderate-income units.

Of the thirty (30) 2-bedroom units, there shall be four (4) very-low-income units, eleven (11) low-income units, and fifteen (15) moderate-income units.

Construction of the Affordable Units shall be phased in compliance with N.J.A.C. 5:93-5.6(d). Here, this means the following:

The first ninety-six (96) market rate units in Phase I may be built before triggering a requirement under the COAH regulations to construct any affordable units.

However, in Phase 2 of the Development, the first twenty four (24) unit affordable housing building must be completed before the ninety-seventh certificate of occupancy is issued for a single family market rate unit.

The Phasing of the Affordable Units shall follow the Phase Summary Table as depicted on **Schedule B**.

The Affordable Units shall be affirmatively marketed in accordance with UHAC and applicable law by an experienced administrative agent that has at least five (5) years of experience marketing affordable units in accordance with UHAC. The affirmative marketing shall include the community and regional organizations identified in the Mount Laurel settlement agreement between the Township of Jackson and Fair Share Housing Center, and it shall also include posting of all Affordable Units on the New Jersey Housing Resource Center website.

All of the Affordable Units shall be subject to affordability controls of at least thirty (30) years from the date of initial occupancy and affordable deed restrictions as provided for by UHAC, with the sole exception that very low income shall be defined as at or below 30 percent of median income pursuant to the Fair Housing Act, and the affordability controls shall remain unless and until the Township takes action to extend or release the unit from such controls after at least thirty (30) years in accordance with N.J.A.C. 5:80-26.11 and applicable law.

The Developer and any successors in interest, including any owner/operator of the Affordable Units, shall be obligated to maintain and upgrade, as may be needed, the sewer and water infrastructure for the Affordable Units to ensure continued service and that it remains in good and workmanlike condition.  No fee shall be charged to the residents of the Affordable Units and the rents of the Affordable Units may not be increased for this. For example, if private water is provided for the Affordable Units, the Developer shall be

responsible for the maintenance and repair of the wells and pumps to provide water to the Affordable Units.

The Developer and any successors in interest, including any owner/operator of the Affordable Units, shall also be obligated to construct the affordable housing in good and workmanlike condition and to maintain the units keeping them up to code and otherwise in sound condition consistent with the applicable building code requirements. No fee shall be charged to the residents of the Affordable Units and the rents of the Affordable Units may not be increased for this.

In the event the Affordable Units are sold by the Developer to another developer or entity, the Developer shall be obligated to inform the Township in writing at least thirty (30) days before the closing date of any such sale.   As part of its obligation to inform the Township prior to the closing date of any sale, the Developer shall provide a certification and documentation evidencing that the Affordable Units are properly deed restricted, administered, affirmatively marketed, and maintained in accordance with UHAC standards at the time of the sale and that the prospective purchaser is aware and committed to the obligations to maintain and administer the units as affordable in accordance with UHAC standards following the sale.

s.  The Parties agree that the Development is not subject to any Township soil ordinance, and that, if necessary, the NJDEP has jurisdiction over compliance issues concerning any fill brought to the Property.

t.  The Parties agree that the Development is not subject to any further review by the

Township Environmental Commission.

u.  The Township shall act in good faith and support the Plaintiffs' efforts with regard to the Plaintiffs' applications, submissions or requests for reimbursement to the Jackson Municipal Utilities Authority.

v.  Plaintiffs shall be exempt from the Township's tree replacement ordinance, §405-1, *et seq.*, of the Township Code. In lieu of a tree placement monetary contribution the Plaintiffs shall reforest the Development consistent with Sheet 111 (entitled as "Tree Location and Tree Save Plan") of the site plan set contained as a part of **Schedule A** since the vast majority of Plaintiffs' site is already vacant due to prior farming and pasture type uses.

w.  The Parties agree that there shall be no future restriction on the development of the area near the CEA and that market rate units may be constructed by Plaintiffs near the CEA as depicted on **Schedules A** and **B** once that portion of the Development receives a final RAO from the NJDEP indicating that the plume area is clean.

x.  Pursuant to N.J.S.A. 40:55D-52(e), the Parties agree that the zoning requirements applicable to this Property as depicted on the Township's Zoning Map shall not be changed for a period of ten (10) years after the date of this Settlement Agreement except that the Township can enact any amendments that do not reduce or otherwise limit the uses provided for in **Schedules A, B and D.** The parties specifically agree that in no event shall any change or modifications to the zoning requirements applicable to this Property affect the terms of this Settlement Agreement.

y.  Plaintiffs' Site Plan/Subdivision Approval shall remain in full force and effect for

ten (10) years from the date of the execution of this Settlement Agreement.

z.  Plaintiffs shall be permitted to construct a front porch and steps on each single family home within the front yard setback not to exceed 120 square feet as reflected on **Schedule D** attached to this Agreement. **Schedule D** represents two (2) examples provided to show the approximate size and configuration of said front porch and steps. Plaintiffs are not limited in any way to these two examples. This Agreement incorporates any dimensional variance relief required with respect to same. Said front porch and steps built within the 120 square foot limitation may intrude into the front yard setback without each individual lot required to secure a bulk variance. The front yard setback shall be calculated from the front yard property line to the foundation of the principal structure of the single family home.

aa. The Plan as depicted on **Schedule A** has satisfied all conditions and is therefore Resolution Compliant.

bb. Plaintiffs agree that they shall provide screening for the rear of the Property backing onto Basso Street as was agreed to by the Plaintiffs at the first Planning Board hearing on the Application in the form of a six (6) foot high vinyl privacy fence to be installed commencing with the start of Phase II with completion no later than issuance of the last CO for Phase III. Each individual lot with their rear yards contiguous to the rear yards of the properties fronting on Basso Street will contain a deed restriction requiring the future homeowner to maintain the six foot high vinyl fence described in this paragraph. The purpose of this deed restriction is to provide privacy to the property owners fronting on Basso Street.

3.  **Adoption of Ordinance**. Within sixty (60) days of execution of this Settlement

Agreement, the Township shall adopt an Ordinance amending the Township Zoning Code for the RG-3 zoning district to provide as follows:

    a.  COAH units may be constructed in such a fashion that 24 units may be included in one building.

    b.  The COAH buildings housing these units may be three (3) stories and forty (40) feet in height.

The Township shall provide the Pinelands Commission with the Ordinance pursuant to the procedure for review and certification of the same within five (5) days of adoption and fully cooperate and participate in that process. The Ordinance will not become effective until approved by the Pinelands Commission. In the event that the Pinelands Commission fails to certify or certifies with conditions that would make the Development impossible or impracticable to develop with **Schedule B**, the parties shall in good faith negotiate an alternative development plan to **Schedule B**.

4.  **Whispering Woods Hearing**. Within thirty (30) days of the expiration of the appeal period to challenge the Ordinance adoption or Certification of the Ordinance by the Pinelands Commission, whichever last occurs, the Planning Board will convene a duly-noticed meeting at which it will conduct a hearing to approve the Final Application and **Schedule B** which shall provide for a total of 386 market rate units and 96 total affordable units which shall be fully compliant with the RG-3 zone as amended. At that same *Whispering Woods* hearing, the Township Planning Board shall consider and approve Plaintiffs' request for rear yard decks not to exceed 240 square feet in the rear setback with stairs not to exceed 100 square feet for all or any of the market rate units. This meeting will be held to consider these matters in compliance with the requirements of *Whispering Woods at Bamm Hollow v. Middletown Planning Bd.*, 220 N.J. Super. 161

(Law Div. 1987) (the "*Whispering Woods* hearing"). No unrelated business will be included on the agenda for the meeting, which will consist only of a *Whispering Woods* hearing for purposes of considering the Final Application as depicted on **Schedule B.** Defendant Planning Board shall provide any and all required notice under the Open Public Meeting Act and the Municipal Land Use Law for the *Whispering Woods* hearing.

The subject *Whispering Woods* hearing will continue until completed, including final deliberations and a vote by the Planning Board. In no event shall the proceedings extend beyond one (1) single *Whispering Woods* hearing. For the avoidance of doubt, the Planning Board's final deliberations and a vote on the Final Application as depicted on **Schedule B** must occur, and the hearing must be concluded, within the course of a single *Whispering Woods* hearing at one meeting. Plaintiffs will provide notice of the *Whispering Woods* hearing at least ten (10) days prior to the date of the hearing by (a) publication in a newspaper in general circulation in the Township, (b) certified mailto the owners of all real property located within 200 feet in all directions of the Property as shown on the current tax map, and (c) certified mail to any public utility company, cable television company, or local utility which possesses a right-of-way or easement within the Township and has registered with the Township in accordance with N.J.S.A. 40:55D-l2.l. The following procedures will govern at the *Whispering Woods* hearing:

(a)     The Planning Board attorney will submit a copy of this Agreement into evidence;

(b)     The Plaintiffs' Engineer or Planner will present the Final Application as depicted on **Schedule B** and the Planning Board Engineer (or other designated representative witness) will present testimony regarding the Settlement Agreement;

(c)     No other live witness testimony will be presented or heard by the Planning Board, except for testimony heard pursuant to Paragraphs 4 (d-f) below;

(d)     The Planning Board shall provide all interested parties with the right, through their attorneys if represented, or directly if not represented, to cross-examine the witnesses identified above, subject to reasonable limitations as to the amount of time allowed for such cross examination in accordance with N.J.S.A. 40:55D-10d, which shall be as follows. For purposes of the *Whispering Woods* hearing and N.J.S.A. 40:55D-4, an "interested party" is defined as any person owning property within 200 feet of the Property. Prior to being able to cross-examine witnesses, all interested parties shall identify themselves and provide under oath the address of the lot(s) they own within 200 feet of the Property. All interested parties shall have three (3) minutes to ask cross-examination questions per witness. This time limitation has been imposed to ensure that the hearing proceeds efficiently and in a timely manner while affording all interested parties the right to cross-examine witnesses;

(e)     Interested parties and residents of the Township shall have the right to provide sworn comments on the Final Application during the hearing, provided that they identify themselves and their address prior to giving their testimony. Any interested party or resident of the Township that fails to so identify himself or herself and their address will be precluded from speaking at the hearing;

(f)     In accordance with N.J.S.A. 40:55D-10d, five (5) minutes of sworn testimony per interested party or resident of the Township shall be permitted. This time limitation has been imposed to ensure that the hearing proceeds efficiently and in a timely manner while affording all interested parties and residents of the Township the right to provide the Planning Board with comments;

(g)     At the conclusion of the *Whispering Woods* hearing or no later than (15) fifteen days thereafter, the Planning Board will adopt a resolution memorializing its decision in accordance with its Rules and Regulations and including all findings of fact and conclusions of law required under applicable law (the "Resolution"). In the event of an approval, the Resolution shall only impose those conditions set forth in this Agreement and/or as shown on the Final Application as depicted on **Schedule B**, unless otherwise agreed in writing by the Parties.

5. **Payment of Professional Fees**. Each Party shall be responsible for payment of their own professionals and experts and their testimony at the Meeting and *Whispering Woods* hearing and for all usual and customary fees incurred thereafter, including but not limited to those associated with the construction and eventual occupancy of Plaintiffs' Development, including by way of example, and not limitation, building permits fees and certificate of occupancy fees, to the extent not addressed in this Settlement Agreement. Any and all application fees associated with the review and processing of Plaintiffs' application of the Development as depicted on **Schedule B** shall be waived by the Defendants.

6. **Township and Planning Board Approval.** This Settlement Agreement is subject to the review and approval of the Township Council and Township Planning Board. It shall be presented at the Council meeting of the Township scheduled for March 8, 2022, at which time the Township Council shall vote on whether to accept this Settlement Agreement, and at the Planning Board meeting scheduled for March 21, 2022, at which time the Township Planning Board shall vote on whether to accept this Settlement Agreement.

7. **Law Governing Plaintiffs' Development**. The Development, including all proceedings pursuant to the Settlement Agreement, will be governed by the Township's zoning and land use ordinances in effect at the time of the submission of Plaintiff Jackson Trails'

original application on August 10, 2018 except to the extent specifically modified herein, *i.e.*, adoption of the Ordinance as set forth in Paragraph 3. This shall not affect the jurisdiction of any other agency which may have oversight of this Development.

8. **Legal Challenges to This Agreement.** In the event of any direct or collateral legal challenges to, appeals from, or other litigation arising from this Settlement Agreement or related Consent Order filed by third parties in any forum, Defendants shall oppose any such legal challenges or appeals, and defend this Settlement Agreement. Plaintiffs, in the event they have not been named a party to any such litigation and upon written notice from the Defendants, shall intervene in any such proceeding. Defendants shall join Plaintiffs in seeking to have any such legal challenges or appeals heard in federal court before Judge Michael A. Shipp (or the District Judge then assigned to this Action). Defendants shall support any application by Plaintiffs to intervene in any such direct or collateral legal challenge or appeal, or any other litigation arising from this Settlement Agreement. Each party shall bear its own fees and costs associated with any direct or collateral legal challenge or appeal, or any other litigation arising from this Settlement Agreement or the related Consent Order, except for an action to enforce the Settlement Agreement and/or Consent Order.

Notwithstanding the above, the parties herein agree that the Superior Court of New Jersey shall have jurisdiction with respect to any challenge or claim relating solely to matters within the jurisdiction of the New Jersey Council on Affordable Housing ("COAH"), but shall not have jurisdiction with respect to any other aspect of this litigation or settlement. In the event the parties cannot agree as to the jurisdiction of COAH, the determination of the same shall be in the discretion of Judge Michael A. Shipp (or the District Judge then assigned to this Action).

9. **Enforcement By Judicial Order, Jurisdiction Retained, and Removal**. The Parties agree to jointly request, through the proposed order set forth at **Schedule C**, that the Court so-order this Settlement Agreement and retain jurisdiction over this matter until a final, non-appealable Certificate of Occupancy for each of the 386 single-family homes, 96 multi-family units, and house of worship on the Property pursuant to the Final Application as depicted on **Schedule B** have been issued (hereinafter the "COs"). For the avoidance of doubt, the Court's retention of jurisdiction over this matter encompasses all matters relating to the Development on the Property. Accordingly, any Complaint in Lieu of Prerogative Writs or other Complaint or pleadings filed in any Division or Venue of the Superior Court of New Jersey shall be promptly removed by Defendants to the United States District Court for the District of New Jersey and marked as a related matter to this Action. All Parties consent to such removal and all further proceedings on any such pleadings shall be in the United States District Court for the District of New Jersey. Once Plaintiffs receive all COs, the Parties will jointly seek dismissal of the lawsuit according to Paragraph 12 of this Settlement Agreement.

In the alternative, if Plaintiffs or their successors in interest fail to submit applications for Building Permits for Phase I of the Development within five (5) years following execution of this Settlement Agreement, Defendants may seek written confirmation from Plaintiffs or their successors in interest that the Development has been abandoned and upon receiving such confirmation, Defendants shall be entitled to move before the District Court for an Order dismissing the Action. If Plaintiffs refuse to provide such confirmation, but Defendants nonetheless contend in good faith that the Development has been abandoned, Defendants may ask the Court to deem the Development abandoned and dismiss the Action and Plaintiffs may oppose such application.

10. **Effective Date**. The Effective Date of this Settlement Agreement will be the day on which duly-authorized representatives of all Plaintiffs and all Defendants have executed the applicable signature pages to this Settlement Agreement.

11. **Release of Claims**. Upon the receipt by Plaintiffs of the Settlement Payment referenced in Paragraph 1, the following Release shall be effective. However, if for any reason the Settlement Payment referenced in Paragraph 1 is not issued, this Mutual Release shall be void and of no effect.

*Release***:**

Plaintiffs, their trustees, officers, officials, volunteers, agents, members, employees, vendors, assigns, successors in interest, insurers, indemnitors, and attorneys and all persons acting by or through the Plaintiffs ("Releasors") hereby release, acquit and forever discharge the Defendants, their respective trustees, officers, officials, volunteers, agents, members, employees, vendors, volunteers, appointees, assigns, successors in interest, insurers, indemnitors and attorneys from any and all claims, liabilities, demands, causes of action, costs, expenses, attorney's fees, damages, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, executions, demands, and obligations in law or equity, whether known or unknown, which they ever had, now have, or hereafter can, shall, or may have, from the beginning of time through the Effective Date of this Settlement Agreement related to or arising from the claims and allegations set forth in this Lawsuit. **HOWEVER**, nothing in this Mutual Release shall be construed to prevent or limit in any way Plaintiffs from challenging and receiving all available remedies for any denial by

Defendants or other Township entities subsequent to the Effective Date of this Settlement Agreement of any approvals or permissions needed to obtain the COs.

12. **Dismissal of the Action**. Within five (5) business days of the earliest to occur of (i) issuance of all final and nonappealable COs for the Development or (ii) pursuant to the procedures set forth in Paragraph 9 above, written confirmation by Plaintiffs or their successors in interest that the Development has been abandoned or the Court has determined that the Development has been abandoned, the Defendants shall file the Joint Stipulation of Dismissal, attached as **Schedule E** to this Agreement, dismissing with prejudice all of the claims in the Action. However, any disputes then pending for resolution before the Court shall be resolved prior to any dismissal. Contemporaneous with the execution of this Settlement Agreement, Plaintiffs will deliver to Defendants a signed copy of the Stipulation of Dismissal, which shall be held in escrow by Defendants' counsel and not released or used for any purpose until as provided in this Settlement Agreement.

Plaintiffs further agree to dismiss without prejudice and waive any and all causes of action and claims for relief in the State Court action entitled "*Jackson Trails, LLC v. Township of Jackson, et al.*, Docket No.: OCN-L-2627-20" within five (5) business days of the earliest to occur of (i) payment of the Settlement Payment or (ii) pursuant to the procedures set forth in this Paragraph above, written confirmation by Plaintiffs or their successors in interest that the Development has been abandoned or the Court has determined that the Development has been abandoned. In the event that there is a final nonappealable Order setting aside or voiding this Settlement Agreement, the Plaintiffs shall within ninety (90) days be permitted to reinstate the State Court action described

above.

13. **Claims Not Assigned**. Each of the Parties acknowledge, represents, and warrants that they have not assigned, sold, or transferred any part of any of the claims or other matters that are being released herein by them.

14. **Independent Judgment and No Other Promises.** The Parties, and each of them, represent and warrant that: (a) other than as specifically set forth in this Settlement Agreement, this Settlement Agreement is executed without any reliance upon any statement, representation, promise, inducement, understanding, or agreement by or on behalf of any Party or by or on behalf of any employee, representative, agent, or attorney employed by any Party; and (b) no promise, inducement, understanding, or agreement not expressed herein has been made to any Party.

15. **Authority to Enter into Settlement Agreement.** Each Party to this Settlement Agreement represents and warrants that it, he, or she is duly authorized to enter into this Settlement Agreement and the signatory below executing this Settlement Agreement on each such Party's behalf, has the authority to sign on behalf of such person or entity. In the event that any judicial, legislative, or other federal, state, or municipal entity of competent jurisdiction finds or holds that any Defendants entered into this Settlement Agreement without proper authority, capacity, or subject to any disqualifying conflicts of interest, Defendants will take all necessary steps to cure such defect and ratify the execution of this Settlement Agreement and all actions taken pursuant to it on behalf of all Defendants.

16. **Settlement Agreement Jointly Prepared**. This Settlement Agreement, including any uncertainty or ambiguity herein, shall not be construed against any one Party, but shall

be construed as if all the Parties jointly prepared this Settlement Agreement.

17. **Separate and Divisible Terms**. The terms and provisions of this Settlement Agreement are intended to be separate and divisible provisions and if, for any reason, any one or more of them is held to be invalid or unenforceable, neither the validity nor the enforceability of any other provision of this Settlement Agreement shall thereby be affected. If, for any reason, any court of competent jurisdiction shall find any provisions of this Settlement Agreement to be unlawful, the Parties agree that the restrictions and prohibitions contained herein shall be effective to the fullest extent allowed by law.

18. **Entire Agreement and Modifications**. This Agreement contains the entirety of the Parties' agreement on the terms addressed herein. Modifications of this Settlement Agreement must be in writing and will be effective upon the written consent of all the Parties or counsel acting on their behalf. No oral modification of any term of this Settlement Agreement shall be effective for any purpose.

19. **No Waiver and Cure Period**. No waiver of any provision herein shall be binding unless in writing and signed by the person or entity against whom the waiver is asserted. No waiver of any breach of any term or provision of this Settlement Agreement shall be construed to be, nor shall it be, a waiver of any other breach of this Settlement Agreement.

20. **Notice and Submissions**. Any notice required under or regarding this Settlement Agreement shall be sent by overnight delivery or courier service, as well as email. Notices to Plaintiffs shall be sent to the following physical and email addresses:

> Roman P. Storzer, Esq.
> Sieglinde K. Rath, Esq.
> Storzer & Associates, P.C.
> 9433 Common Brook Road
> Suite 208
> Owings Mills, Maryland 21117

storzer@storzerlaw.com
rath@storzerlaw.com

Donna M. Jennings, Esq.
Wilentz, Goldman, & Spitzer, PA
90 Woodbridge Center Drive
Suite 900
Woodbridge, New Jersey 07095
djennings@wilentz.com

Notices to Defendants shall be sent to the following physical and email addresses:

Brent R. Pohlman, Esq.
Mandelbaum Salsburg P.C.
3 Becker Farm Road
Suite 105
Roseland, NJ 81726
bpohlman@lawfirm.ms

Sean Gertner, Esq.
Gertner & Gertner, LLC
740 Bennetts Mills Road
Jackson, NJ 08527
sgertner@gertneresq.com

Gregory McGuckin, Esq.
Dasti, Murphy & McGuckin P.C.
620 Lacey Road, #1
Forked River, NJ 08731
gmcguckin@dmmlawfirm.com

21. **Governing Law and Forum**. This Settlement Agreement shall be deemed to have been executed and delivered within the State of New Jersey, and the Parties' rights and obligations hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of New Jersey without regard to rules regarding choice of laws, except to the extent that federal law applies to questions regarding the Court's continuing jurisdiction in this matter or special federal common law preempts any application of state law with respect to interpretation or application of this Settlement Agreement. The United States District Court for the District of New Jersey shall retain jurisdiction to

enforce the terms of this Agreement as per Paragraph 9 herein and the Parties consent to removal of all claims arising hereunder as per Paragraphs 8 and 9 of this Settlement Agreement. Notwithstanding anything to the contrary in this Settlement Agreement, federal law, including but not limited to the FHA and RLUIPA, governs all substantive claims giving rise to the Lawsuit and this Settlement Agreement, although any claims that fall within the jurisdiction of COAH as described in Paragraph 8 above, shall be governed by state law.

22. **Execution in Counterparts.** This Settlement Agreement may be executed in one or more counterparts.   The signature pages of the various counterparts may be collected with one copy of the balance of this Settlement Agreement, which, together with collected and signed signature pages, shall constitute a true and correct copy of this Settlement Agreement. Photocopies or electronic scans of this Settlement Agreement (including signature pages) may be used in place of originals for any and all purposes.

23. **Representation as to Plaintiffs.** The parties acknowledge that Jackson Pines LLC is the Managing Member of all of the Plaintiffs except Lakewood Investments, LLC. Mordechai Eichorn is the managing member of Jackson Pines LLC.

**ALL OF THE ABOVE IS AGREED AND ACCEPTED** and is effective as of the Effective Date.


Jackson Trails LLC

_____

By:    Mordechai Eichorn, Managing Member of Jackson Pines LLC

Dated:  3/28/22

Jackson 222324 LLC

By:     Mordechai Eichorn, Managing Member of Jackson Pines LLC

Dated:   3/28/22

Jackson Farms LLC

By:     Mordechai Eichorn, Managing Member of Jackson Pines LLC

Dated:   3/28/22

Jackson Run LLC

By:     Mordechai Eichorn, Managing Member of Jackson Pines LLC

Dated:   3/28/22

Jackson Walk LLC

By:     Mordechai Eichorn, Managing Member of Jackson Pines LLC

Dated:   3/28/22

Lakewood Investments, LLC

By:     Mordechai Eichorn, Managing Member

Dated:   3/28/22

28

Planning Board of the Township of Jackson

_____

By:    Robert Hudak, Chairman of the Planning Board of the Township of Jackson

Dated: _____

Township of Jackson

_____

By:  Michael Reina, Township of Jackson Council Mayor

Dated: ___3 . 8 . 2022___

29

Planning Board of the Township of Jackson

By:      Robert Hudak, Chairman of the Planning Board of the Township of Jackson

Dated: _____ 3/21/22

Township of Jackson

By:  Michael Reina, Township of Jackson Council Mayor

Dated: _____

29





PHASE 4
PHASE 3
PHASE 2
PHASE 3
PHASE 1
ROAD C
ROAD B
ROAD F
ROAD D
ROAD A
ROAD E
ROAD G
ROAD H
BLOCK 23001
BLOCK 23006
BLOCK 23008
BLOCK 23009
BLOCK 23010
BLOCK 23011
BLOCK 23013
BLOCK 23004
BLOCK 23015
TEMPORARY CONSTRUCTION ACCESS FOR PHASE 2
TEMPORARY CONSTRUCTION ACCESS FOR PHASE 2
SOUTH DETENTION POND
HOUSE OF WORSHIP
SEWER PUMP STATION DEDICATED TO JTMUA
NORTH DETENTION POND
PUMP STATION AND NORTH BASIN IN PHASE 1
PHASE 1 LIMIT OF DISTURBANCE
PHASE 1 CONSTRUCTION ACCESS
SOUTH HOPE CHAPEL ROAD (OCEAN COUNTY ROUTE 547)
MANCHESTER TOWNSHIP
JACKSON TOWNSHIP
(92) 2 STORY MULTI-FAMILY AFFORDABLE HOUSING UNIT 4 UNITS/BUILDING WITH 3 PARKING SPACES PER UNIT (TYP.)
(367) SINGLE FAMILY MARKET RATE UNITS 2 STORY WITH BASEMENT (TYP.)

# SCHEDULE A

| | CHURCHES AND PLACES OF WORSHIP MAY BE PERMITTED AS A CONDITIONAL USE, PROVIDED THAT THE LOT, USE AND STRUCTURES SHALL ADHERE TO THE FOLLOWING PURSUANT TO 244-115: | | |
|---|---|---|---|
| | REQUIRED | PROVIDED | NOTE |
| A. | THE REQUIRED MINIMUM LOT AREA SHALL BE TWO ACRES. | 4.47 ACRES | COMPLIES |
| B. | THE REQUIRED MINIMUM LOT WIDTH SHALL BE 200 FEET. | 392 FEET | COMPLIES |
| C. | THE REQUIRED MINIMUM LOT FRONTAGE SHALL BE 200 FEET. | 452 FEET | COMPLIES |
| D. | NO PRINCIPAL BUILDING SHALL BE LOCATED CLOSER THAN 100 FEET TO ANY PUBLIC STREET RIGHT-OF-WAY AND NO CLOSER THAN 50 FEET TO ANY REAR OR SIDE PROPERTY LINE. | 128 FEET TO FRONT PROPERTY LINE AND 91 FEET TO SIDE PROPERTY LINE | COMPLIES |
| E. | NO ACCESSORY BUILDING OR STRUCTURE SHALL BE PERMITTED IN ANY FRONT YARD, NOR SHALL ANY ACCESSORY BUILDING OR STRUCTURE BE LOCATED CLOSER THAN 30 FEET TO ANY REAR OR SIDE PROPERTY LINE. | NO ACCESSORY BUILDING IS PROPOSED | COMPLIES |
| F. | THE MAXIMUM PERMITTED BUILDING COVERAGE SHALL BE 25%. | 4.6% IS PROPOSED | COMPLIES |
| G. | THE HEIGHT OF STRUCTURES TO BE CONSTRUCTED MAY EXCEED THE MAXIMUM HEIGHT REQUIREMENTS OF § 244-156 OF THIS CHAPTER; PROVIDED, HOWEVER, THAT THE FRONT, REAR AND SIDE YARD REQUIREMENTS SET FORTH ABOVE SHALL BE INCREASED BY TWO FEET FOR EACH FOOT BY WHICH THE HEIGHT OF THE STRUCTURE EXCEEDS THE MAXIMUM HEIGHT WHICH WOULD BE OTHERWISE PERMITTED BY THIS CHAPTER, AND FURTHER PROVIDED THAT IN NO CASE SHALL ANY PROPOSED STRUCTURE EXCEED 50 FEET IN HEIGHT. | 34.5 FT.PROPOSED HEIGHT OF BUILDING COMPLIES WITH THE 35 FEET MAXIMUM BUILDING HEIGHT PERMITTED IN THE RG-3 ZONE | COMPLIES |
| H. | THE APPLICANT SHALL SUBMIT A LIST OF PROPOSED ACTIVITIES AND ANTICIPATED PARTICIPANTS, A TIMETABLE REFLECTING THE HOURS IN WHICH EACH BUILDING WILL BE USED AND ANY OTHER PERTINENT USES AND ACTIVITIES INTENDED TO TAKE PLACE ON THE SITE. | OUTLINED IN THE STATEMENT OF OPERATIONS | COMPLIES |
| I. | LOTS SHALL NOT HAVE THEIR PRIMARY FRONTAGE OR ACCESS ON A RESIDENTIAL ACCESS OR RESIDENTIAL NEIGHBORHOOD STREET OR ANY LOWER ORDER STREET, AS DEFINED BY THE RESIDENTIAL SITE IMPROVEMENT STANDARDS. | THE LOT HAS FRONTAGE ON A MAJOR COLLECTOR STREET AS DEFINED BY R.S.I.S. | COMPLIES |
| J. | BUFFER REQUIREMENTS. (1) PERIMETER BUFFER. A LANDSCAPED BUFFER SHALL BE REQUIRED AROUND THE ENTIRE LENGTH OF SIDE AND REAR PROPERTY LINES, EXCEPT WHERE ACCESS DRIVES OR OTHER ACCESSORY FEATURES MUST, OF NECESSITY, TRAVERSE THIS RESERVED STRIP. THE MINIMUM LANDSCAPE BUFFER WIDTHS SHALL BE AS FOLLOWS: | | COMPLIES |
| | (A) FROM A NONRESIDENTIAL USE OR DISTRICT: 25 FEET. | 25 FEET | COMPLIES |
| | (B) FROM A RESIDENTIAL USE OR DISTRICT: 50 FEET. | 50 FEET | COMPLIES |
| | (2) A REQUIRED BUFFER SHALL BE LANDSCAPED WITH TREES, SHRUBS, AND OTHER SUITABLE PLANTINGS FOR BEAUTIFICATION AND SCREENING. NATURAL VEGETATION SHOULD BE RETAINED TO THE MAXIMUM DEGREE POSSIBLE. ON THOSE SITES WHERE NO EXISTING VEGETATION IS PRESENT OR EXISTING VEGETATION IS INADEQUATE TO PROVIDE SCREENING, THE APPLICANT SHALL SUITABLY GRADE AND PLANT THE REQUIRED BUFFER AREA, SUCH THAT THIS PLANTING SHALL PROVIDE AN ADEQUATE SCREEN OF AT LEAST SIX FEET IN HEIGHT SO AS TO CONTINUALLY RESTRICT THE VIEW. A MINIMUM ON-CENTER DISTANCE BETWEEN PLANTINGS SHALL BE SUCH THAT UPON MATURITY THE BUFFER WILL CREATE A SOLID SCREEN. THE BUFFER MAY BE SUPPLEMENTED WITH A FENCE OF SOLID MATERIAL WHERE NECESSARY. | | COMPLIES |
| | (3) OTHER SITE STANDARDS. THE FRONT YARD, EXCLUSIVE OF WALKWAYS, PAVILIONARE AS, OR DRIVEWAYS, SHALL BE LANDSCAPED WITH GRASS, TREES, SHRUBS, GROUND COVER, FLOWERS, EXISTING VEGETATION, OR ANY SUITABLE COMBINATION THEREOF. PLANTINGS SHALL CONFORM, HOWEVER, TO RESTRICTIONS ON CORNER LOT PLACEMENT, IN ORDER TO PROTECT VISIBILITY. | | COMPLIES |

| PARKING REQUIREMENTS - HOUSE OF WORSHIP 1 (244-197) | | |
|---|---|---|
| SANCTUARY | FLOOR AREA | PARKING SPACE REQUIRED |
| MAIN SANCTUARY | 4,943 S.F. | 99 |
| SANCTUARY #2 | 2,418 S.F. | 48 |
| SANCTUARY #3 | 2,418 S.F. | 48 |
| REQUIRED FOR ALL 3 AREAS | 9,779 S.F. | 195 |
| PROVIDED | | 208 |

150 0 150 300 450
SCALE IN FEET

| RG-3 REGIONAL GROWTH ZONE REQUIREMENTS (244-91) | | |
|---|---|---|
| | REQUIRED | PROVIDED |
| MAXIMUM DENSITY | 4.5 D.U. / ACRE | 3.6 D.U. / ACRE |
| MINIMUM LOT AREA | 7,500 SQ. FT. | 7,500 SQ. FT. |
| MINIMUM LOT WIDTH | 75 FT. | 75 FT. |
| MINIMUM LOT FRONTAGE | 60 FT. | 60 FT. |
| MINIMUM LOT DEPTH | 100 FT. | 100 FT. |
| MINIMUM FRONT YARD SETBACK | 30 FT. | 30 FT. |
| MINIMUM SIDE YARD SETBACK | 8/20 FT. | 8/20 FT. |
| MINIMUM REAR YARD SETBACK | 25 FT. | 25 FT. |
| MINIMUM ACCESSORY SETBACK | 5 FT. | 5 FT. |
| MAXIMUM BUILDING HEIGHT | 2.5 STORIES / 35 FT. | 2.5 STORIES / 35 FT. |
| AFFORDABLE HOUSING | 92 DWELLINGS | 92 DWELLINGS |
| REQUIRED SET ASIDE | 20% | 20% |
| MAXIMUM # UNITS PER BUILDING | 4 | 4 |
| PINELANDS DEVELOPMENT CREDITS | 110 | 110 |

| | |
|---|---|
| LOTS TO BE SERVED BY PUBLIC SEWER | COMPLIES |
| TRAFFIC IMPACT ASSESSMENT REQUIRED | COMPLIES |
| PINELANDS DEVELOPMENT CREDITS REQURED FOR MARKET RATE UNITS | COMPLIES |
| AFFORDABLE HOUSING REQUIRED | COMPLIES |

| | OFF-STREET PARKING PER R.S.I.S. - N.J.A.C. 5:21 |
|---|---|
| A. | (28) 2 BEDROOM TOWNHOME UNITS X 2.3 = 64 |
| | (64) 3 BEDROOM TOWNHOME UNITS X 2.4 = 154 |
| | TOTAL REQUIRED 218 |
| | TOTAL PROVIDED 219 (184 DRIVEWAYS; 35 IN PARKING LOTS) |
| B. | 4 BEDROOM SF HOME - 2.5 SPACES PER UNIT |
| | 5 BEDROOM SF HOME - 3.0 SPACES/UNIT |
| | TOTAL PROVIDED 3 SPACES PER UNIT |

| AFFORDABLE HOUSING COMPLETION SCHEDULE | | | | |
|---|---|---|---|---|
| MARKET UNITS | | AFFORDABLE UNITS | | NOTES |
| NUMBER (1) | PERCENTAGE | NUMBER (1) | PERCENTAGE | |
| 92 | 25% | 0 | 0% | |
| 93 | | 10 | 10% | COMPLETE 3 BUILDING = 12 UNITS |
| 184 | 50% | 46 | 50% | COMPLETE 12 BUILDING = 48 UNITS |
| 276 | 75% | 69 | 75% | COMPLETE 18 BUILDING = 72 UNITS |
| 331 | 90% | 92 | 100% | COMPLETE 23 BUILDING = 92 UNITS |
| NOTE: BASED ON 367 MARKET UNITS | | | | |
| (1) = UNITS COMPLETED | | | | |

| AFFORDABLE HOUSING BEDROOM MIX | | |
|---|---|---|
| N.J.A.C. 5:80-26.1 - DECEMBER 20, 2004 | | |
| | REQUIRED | PROVIDED |
| MAXIMUM EFFICIENCY UNITS | 20% - 19 UNITS | 0 UNITS |
| MINIMUM 2 BEDROOM UNITS | 30% - 28 UNITS | 28 UNITS |
| MINIMUM 3 BEDROOM UNITS | 20% - 20 UNITS | 64 UNITS |
| TOTAL NUMBER OF UNITS | | 92 |

| PHASE SCHEDULE | | |
|---|---|---|
| PHASE 1 | 92 LOTS | |
| PHASE 2 | 91 LOTS | 12 COAH |
| PHASE 3 | 91 LOTS | 36 COAH |
| PHASE 4 | 93 LOTS | 44 COAH |
| TOTAL | 367 LOTS | 92 COAH |

## PROJECT YIELD

TOTAL MARKET LOTS = 367 (1)

TOTAL AFFORDABLE UNITS = 92 (20.0% OF TOTAL)

TOTAL DWELLING UNITS = 459

## DESIGN WAIVERS REQUESTED:

STREET LIGHTING TO PROVIDE AN AVERAGE MAINTAINED LIGHTING LEVEL OF 0.4 HORIZONTAL FOOTCANDLE WITH A UNIFORMITY RATIO OF 6 TO 1 ON ALL LOCAL, LOCAL COLLECTOR AND MINOR COLLECTOR STREETS NOT PROVIDED

## NOTE:

NO DEVELOPMENT, INCLUDING CLEARING AND LAND DISTURBANCE, IS PERMITTED IN WETLANDS OR WETLAND BUFFERS

OWNERSHIP OF DOCUMENTS

THIS DOCUMENT AND THE IDEAS AND DESIGNS INCORPORATED HEREIN, AS AN INSTRUMENT OF PROFESSIONAL SERVICE, IS THE PROPERTY OF PROFESSIONAL DESIGN SERVICES, L.L.C., AND IS NOT TO BE USED IN WHOLE OR IN PART FOR ANY OTHER PROJECT WITHOUT THE WRITTEN AUTHORIZATION OF PROFESSIONAL DESIGN SERVICES, L.L.C.

| NO. | DATE | DESCRIPTION | BY |
|---|---|---|---|
| 1 | 5/24/2021 | REVISED PER COAH SCHEDULE | BY |

PDS
PROFESSIONAL DESIGN SERVICES, L.L.C.
CONSULTING ENGINEERS, PLANNERS, ENVIRONMENTAL SCIENTISTS, CONSTRUCTION SERVICES
1245 AIRPORT ROAD, SUITE 1, LAKEWOOD, NEW JERSEY 08701
PHONE 732 363 0060 FAX 732 363 0073
ENGINEERING@PDSDOVER.COM
NEW JERSEY STATE BOARD OF P.E. & L.S.
CERTIFICATE OF AUTHORIZATION NO. 24GA28125400
GRAHAM J. MACFARLANE, P.E.
PROFESSIONAL ENGINEER, NEW JERSEY LIC. #3[illegible]110
PROFESSIONAL PLANNER, NEW JERSEY LIC. #[illegible]104

PRELIMINARY AND FINAL PLANS - MAJOR SUBDIVISION

# PHASING PLAN

FOR

## JACKSON TRAILS

BLOCK 23001
LOTS 22, 23, 24, 25, 26, 27, 28 & 29
TOWNSHIP OF JACKSON
OCEAN COUNTY NEW JERSEY

| SCALE: 1" = 150' | DATE: 5/21/2019 | JOB NUMBER: 17286 | SHEET 1 / 1 |
|---|---|---|---|
| DRAWN BY: BK/SC | DESIGNED BY: GJM | CHECKED BY: GJM | |

BILLK 3/1/22
H:\PROJECTS\17286 < 17286_PHASING PLAN >

# Schedule B

| RG-3 REGIONAL GROWTH ZONE REQUIREMENTS (244-91) | | |
|---|---|---|
| | REQUIRED | PROVIDED |
| MAXIMUM DENSITY | 4.5 D.U. / ACRE | 3.6 D.U. / ACRE |
| MINIMUM LOT AREA | 7,500 SQ. FT. | 7,500 SQ. FT. |
| MINIMUM LOT WIDTH | 75 FT. | 75 FT. |
| MINIMUM LOT FRONTAGE | 60 FT. | 60 FT. |
| MINIMUM LOT DEPTH | 100 FT. | 100 FT. |
| MINIMUM FRONT YARD SETBACK | 30 FT. | 30 FT. |
| MINIMUM SIDE YARD SETBACK | 8/20 FT. | 8/20 FT. |
| MINIMUM REAR YARD SETBACK | 25 FT. | 25 FT. |
| MINIMUM ACCESSORY SETBACK | 5 FT. | 5 FT. |
| MAXIMUM BUILDING HEIGHT | 2.5 STORIES / 35 FT. | 3 STORIES (1) |
| AFFORDABLE HOUSING | 96 DWELLINGS | 96 DWELLINGS |
| REQUIRED SET ASIDE | 20% | 20% |
| MAXIMUM # UNITS PER BUILDING | 4 | 24 (1) |
| PINELANDS DEVELOPMENT CREDITS | 116 | 116 |
| (1) - VARIANCE REQ'D | | |

| | |
|---|---|
| LOTS TO BE SERVED BY PUBLIC SEWER | COMPLIES |
| TRAFFIC IMPACT ASSESSMENT REQUIRED | COMPLIES |
| PINELANDS DEVELOPMENT CREDITS REQURED FOR MARKET RATE UNITS | COMPLIES |
| AFFORDABLE HOUSING REQUIRED | COMPLIES |

| | OFF-STREET PARKING PER R.S.I.S. - N.J.A.C. 5:21 |
|---|---|
| A. | (28) 2 BEDROOM TOWNHOME UNITS X 2.3 = 64 |
| | (68) 3 BEDROOM TOWNHOME UNITS X 2.4 = 164 |
| | TOTAL REQUIRED 228 |
| | TOTAL PROVIDED 236 |
| B. | 4 BEDROOM SF HOME - 2.5 SPACES PER UNIT |
| | 5 BEDROOM SF HOME - 3.0 SPACES/UNIT |
| | TOTAL PROVIDED 3 SPACES PER UNIT |

| AFFORDABLE HOUSING BEDROOM MIX | | |
|---|---|---|
| N.J.A.C. 5:80-26.1 - DECEMBER 20, 2004 | | 96 |
| | REQUIRED | PROVIDED |
| MAXIMUM EFFICIENCY UNITS | 20% - 19 UNITS | 0 UNITS |
| MINIMUM 2 BEDROOM UNITS | 30% - 28 UNITS | 28 UNITS |
| MINIMUM 3 BEDROOM UNITS | 20% - 20 UNITS | 68 UNITS |
| TOTAL NUMBER OF UNITS | | 96 |

| AFFORDABLE HOUSING COMPLETION SCHEDULE | | | | |
|---|---|---|---|---|
| MARKET UNITS | | AFFORDABLE UNITS | | NOTES |
| NUMBER (1) | PERCENTAGE | NUMBER (1) | PERCENTAGE | |
| 97 | 25% | 0 | 0% | |
| 98 | | 9 | 10% | COMPLETE 1 BUILDING = 24 UNITS |
| 193 | 50% | 48 | 50% | COMPLETE 2 BUILDINGS = 48 UNITS |
| 290 | 75% | 72 | 75% | COMPLETE 3 BUILDINGS = 72 UNITS |
| 347 | 90% | 96 | 100% | COMPLETE 4 BUILDINGS = 96 UNITS |
| NOTE: BASED ON 386 MARKET UNITS | | | | |
| (1) = UNITS COMPLETED | | | | |

## PROJECT YIELD

TOTAL MARKET LOTS = 386 (1)

TOTAL AFFORDABLE UNITS = 96 (20.0% OF TOTAL)

TOTAL DWELLING UNITS = 482

## DESIGN WAIVERS REQUESTED:

STREET LIGHTING TO PROVIDE AN AVERAGE MAINTAINED LIGHTING LEVEL OF 0.4 HORIZONTAL FOOTCANDLE WITH A UNIFORMITY RATIO OF 6 TO 1 ON ALL LOCAL, LOCAL COLLECTOR AND MINOR COLLECTOR STREETS NOT PROVIDED

## NOTE:

NO DEVELOPMENT, INCLUDING CLEARING AND LAND DISTURBANCE, IS PERMITTED IN WETLANDS OR WETLAND BUFFERS

| PHASE SUMMARY | | | |
|---|---|---|---|
| PHASE | SINGLE FAMILY LOTS | AFFORDABLE UNITS | |
| | | REQUIRED | CONSTRUCTED |
| 1 | 97 | NONE | NONE |
| 2 | 95 | 9 | CONSTRUCT (1) BUILDING - 24 UNITS |
| 3 | 97 | 48 | CONSTRUCT (1) BUILDING - 48 UNITS |
| 4 | 97 | 96 | CONSTRUCT (2) BUILDING - 96 UNITS |

| CHURCHES AND PLACES OF WORSHIP MAY BE PERMITTED AS A CONDITIONAL USE, PROVIDED THAT THE LOT, USE AND STRUCTURES SHALL ADHERE TO THE FOLLOWING PURSUANT TO 244-115: | | | |
|---|---|---|---|
| | REQUIRED | PROVIDED | NOTE |
| A. | THE REQUIRED MINIMUM LOT AREA SHALL BE TWO ACRES. | 4.47 ACRES | COMPLIES |
| B. | THE REQUIRED MINIMUM LOT WIDTH SHALL BE 200 FEET. | 392 FEET | COMPLIES |
| C. | THE REQUIRED MINIMUM LOT FRONTAGE SHALL BE 200 FEET. | 452 FEET | COMPLIES |
| D. | NO PRINCIPAL BUILDING SHALL BE LOCATED CLOSER THAN 100 FEET TO ANY PUBLIC STREET RIGHT-OF-WAY AND NO CLOSER THAN 50 FEET TO ANY REAR OR SIDE PROPERTY LINE. | 128 FEET TO FRONT PROPERTY LINE AND 91 FEET TO SIDE PROPERTY LINE | COMPLIES |
| E. | NO ACCESSORY BUILDING OR STRUCTURE SHALL BE PERMITTED IN ANY FRONT YARD, NOR SHALL ANY ACCESSORY BUILDING OR STRUCTURE BE LOCATED CLOSER THAN 30 FEET TO ANY REAR OR SIDE PROPERTY LINE. | NO ACCESSORY BUILDING IS PROPOSED | COMPLIES |
| F. | THE MAXIMUM PERMITTED BUILDING COVERAGE SHALL BE 25%. | 4.6% IS PROPOSED | COMPLIES |
| G. | THE HEIGHT OF STRUCTURES TO BE CONSTRUCTED MAY EXCEED THE MAXIMUM HEIGHT REQUIREMENTS OF § 244-156 OF THIS CHAPTER; PROVIDED, HOWEVER, THAT THE FRONT, REAR AND SIDE YARD REQUIREMENTS SET FORTH ABOVE SHALL BE INCREASED BY TWO FEET FOR EACH FOOT BY WHICH THE HEIGHT OF THE STRUCTURE EXCEEDS THE MAXIMUM HEIGHT WHICH WOULD BE OTHERWISE PERMITTED BY THIS CHAPTER, AND FURTHER PROVIDED THAT IN NO CASE SHALL ANY PROPOSED STRUCTURE EXCEED 50 FEET IN HEIGHT. | 34.5 FT.PROPOSED HEIGHT OF BUILDING COMPLIES WITH THE 35 FEET MAXIMUM BUILDING HEIGHT PERMITTED IN THE RG-3 ZONE | COMPLIES |
| H. | THE APPLICANT SHALL SUBMIT A LIST OF PROPOSED ACTIVITIES AND ANTICIPATED PARTICIPANTS, A TIMETABLE REFLECTING THE HOURS IN WHICH EACH BUILDING WILL BE USED AND ANY OTHER PERTINENT USES AND ACTIVITIES INTENDED TO TAKE PLACE ON THE SITE. | OUTLINED IN THE STATEMENT OF OPERATIONS | COMPLIES |
| I. | LOTS SHALL NOT HAVE THEIR PRIMARY FRONTAGE OR ACCESS ON A RESIDENTIAL ACCESS OR RESIDENTIAL NEIGHBORHOOD STREET OR ANY LOWER ORDER STREET, AS DEFINED BY THE RESIDENTIAL SITE IMPROVEMENT STANDARDS. | THE LOT HAS FRONTAGE ON A MAJOR COLLECTOR STREET AS DEFINED BY R.S.I.S. | COMPLIES |
| J. | BUFFER REQUIREMENTS. (1) PERIMETER BUFFER. A LANDSCAPED BUFFER SHALL BE REQUIRED AROUND THE ENTIRE LENGTH OF SIDE AND REAR PROPERTY LINES, EXCEPT WHERE ACCESS DRIVES OR OTHER ACCESSORY FEATURES MUST, OF NECESSITY, TRAVERSE THIS RESERVED STRIP. THE MINIMUM LANDSCAPE BUFFER WIDTHS SHALL BE AS FOLLOWS: | | COMPLIES |
| | (A) FROM A NONRESIDENTIAL USE OR DISTRICT: 25 FEET. | 25 FEET | COMPLIES |
| | (B) FROM A RESIDENTIAL USE OR DISTRICT: 50 FEET. | 50 FEET | COMPLIES |
| | (2) A REQUIRED BUFFER SHALL BE LANDSCAPED WITH TREES, SHRUBS, AND OTHER SUITABLE PLANTINGS FOR BEAUTIFICATION AND SCREENING. NATURAL VEGETATION SHOULD BE RETAINED TO THE MAXIMUM DEGREE POSSIBLE. ON THOSE SITES WHERE NO EXISTING VEGETATION IS PRESENT OR EXISTING VEGETATION IS INADEQUATE TO PROVIDE SCREENING, THE APPLICANT SHALL SUITABLY GRADE AND PLANT THE REQUIRED BUFFER AREA, SUCH THAT THIS PLANTING SHALL PROVIDE AN ADEQUATE SCREEN OF AT LEAST SIX FEET IN HEIGHT SO AS TO CONTINUALLY RESTRICT THE VIEW. A MINIMUM ON-CENTER DISTANCE BETWEEN PLANTINGS SHALL BE SUCH THAT UPON MATURITY THE BUFFER WILL CREATE A SOLID SCREEN. THE BUFFER MAY BE SUPPLEMENTED WITH A FENCE OF SOLID MATERIAL WHERE NECESSARY. | | COMPLIES |
| | (3) OTHER SITE STANDARDS. THE FRONT YARD, EXCLUSIVE OF WALKWAYS, PAVILIONARE AS, OR DRIVEWAYS, SHALL BE LANDSCAPED WITH GRASS, TREES, SHRUBS, GROUND COVER, FLOWERS, EXISTING VEGETATION, OR ANY SUITABLE COMBINATION THEREOF. PLANTINGS SHALL CONFORM, HOWEVER, TO RESTRICTIONS ON CORNER LOT PLACEMENT, IN ORDER TO PROTECT VISIBILITY. | | COMPLIES |

| PARKING REQUIREMENTS - HOUSE OF WORSHIP 1 (244-197) | | |
|---|---|---|
| SANCTUARY | FLOOR AREA | PARKING SPACE REQUIRED |
| MAIN SANCTUARY | 4,943 S.F. | 99 |
| SANCTUARY #2 | 2,418 S.F. | 48 |
| SANCTUARY #3 | 2,418 S.F. | 48 |
| REQUIRED FOR ALL 3 AREAS | 9,779 S.F. | 195 |
| PROVIDED | | 208 |

OWNERSHIP OF DOCUMENTS

THIS DOCUMENT AND THE IDEAS AND DESIGNS INCORPORATED HEREIN, AS AN INSTRUMENT OF PROFESSIONAL SERVICE, IS THE PROPERTY OF PROFESSIONAL DESIGN SERVICES, L.L.C., AND IS NOT TO BE USED IN WHOLE OR IN PART FOR ANY OTHER PROJECT WITHOUT THE WRITTEN AUTHORIZATION OF PROFESSIONAL DESIGN SERVICES, L.L.C.

| NO. | DATE | DESCRIPTION | BY |
|---|---|---|---|

PDS
PROFESSIONAL DESIGN SERVICES, L.L.C.
CONSULTING ENGINEERS, PLANNERS, ENVIRONMENTAL SCIENTISTS, CONSTRUCTION SERVICES
1245 AIRPORT ROAD, SUITE 1, LAKEWOOD, NEW JERSEY 08701
PHONE 732 363 0060 FAX 732 363 0073
ENGINEERING@PDSDOVER.COM
NEW JERSEY STATE BOARD OF P.E. & L.S.
CERTIFICATE OF AUTHORIZATION NO. 24GA28125400
GRAHAM J. MACFARLANE, P.E.
PROFESSIONAL ENGINEER, NEW JERSEY LIC. #37110
PROFESSIONAL PLANNER, NEW JERSEY LIC. #6104

PRELIMINARY AND FINAL PLANS - MAJOR SUBDIVISION
CONCEPTUAL PHASING PLAN - JANUARY 2022
FOR
**JACKSON TRAILS**
BLOCK 23001
LOTS 22, 23, 24, 25, 26, 27, 28 & 29
TOWNSHIP OF JACKSON
OCEAN COUNTY NEW JERSEY

| | | | |
|---|---|---|---|
| SCALE: 1" = 150' | DATE: JANUARY 10, 2022 | JOB NUMBER: 17286 | SHEET 1 / 1 |
| DRAWN BY: BK/SC | DESIGNED BY: GJM | CHECKED BY: GJM | |

BILLK 2/28/22
H:\PROJECTS\17286\CONCEPTS < 17286 CONCEPT JAN 2022 >

**SCHEDULE C**

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JACKSON TRAILS LLC, a New Jersey limited liability corporation, JACKSON 222324 LLC, a New Jersey limited liability corporation, JACKSON FARMS LLC, a New Jersey limited liability corporation, JACKSON RUN LLC, a New Jersey limited liability corporation, JACKSON WALK LLC, a New Jersey limited liability corporation, and LAKEWOOD INVESTMENTS, LLC, a New Jersey limited liability corporation, | Civ. No. 3:20-cv-01150 **CONSENT ORDER** |
| Plaintiffs, | |
| v. | |
| TOWNSHIP OF JACKSON, a New Jersey municipal corporation and body politic; and the PLANNING BOARD OF THE TOWNSHIP OF JACKSON, a municipal agency, | |
| Defendants. | |

**THIS MATTER** having been brought before the Court on the Amended Complaint of

Plaintiffs, Jackson Trails LLC, Jackson 222324 LLC, Jackson Farms LLC, Jackson Run LLC,

Jackson Walk LLC, and Lakewood Investments, LLC, pursuant to the provisions of the Fair

Housing Act ("FHA"), 42 U.S.C. §§ 3604 and 3617; the Free Exercise and Establishment

Clauses of the First Amendment, the Equal Protection and Due Process Clauses of the

Fourteenth Amendment of the United States Constitution; 42 U.S.C. § 1982; the Religious Land

Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.*, and New

1

Jersey law to use certain real property identified as Block 23001, Lots 22-29 on the tax map of the Township of Jackson (the "Property") for a residential housing, which would include 367 single-family homes and 92 multi-family units, and a house of worship; and

**WHEREAS** Plaintiff, Jackson Trails, LLC, submitted an application to the Township of Jackson Planning Board ("Planning Board") seeking conditional use approval, preliminary and final major subdivision approval, and preliminary and final major site plan approval ("Application") in connection with its proposed use on the Property; and

**WHEREAS** public hearings  on the Application were conducted by the Planning Board on August 19, 2019 and October 7, 2019 at which time the Planning Board denied the Application; and a Motion for Reconsideration was heard at a December 2, 2019 meeting before the Planning Board, but the Planning Board failed to act on same; and

**WHEREAS** on December 2, 2019, the Planning Board issued a written resolution memorializing its decision to deny the Application and all requested conditional use, preliminary and final major subdivision  and preliminary and final major site plan relief on October 7, 2019 by virtue of a 4-4 vote on said Application; and

**WHEREAS**, on February 3, 2020, the Plaintiff filed a complaint against Defendants in the United States District Court for the District of New Jersey (the "Court") captioned *Jackson Trails v. Township of Jackson, et al*. Civil Action No.3:20-cv-01150 (the "Action"); subsequently amended on February 5, 2021 to add additional Plaintiffs; and

**WHEREAS**, in the Action, Plaintiffs asserted claims against Defendants for violations of the FHA, 42 U.S.C. §§ 3604 and 3617; the Free Exercise and Establishment Clauses of the First Amendment; the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the

United States Constitution; 42 U.S.C. § 1982; RLUIPA, 42 U.S.C. §§ 2000cc, *et seq.*, and New Jersey law, arising from the Planning Board's denial of the Application; and

**WHEREAS**, on March 13, 2020, Defendants filed a Motion to Dismiss Counts XIII and XIV of the Plaintiffs' Complaint and on March 20, 2020, the Court entered an Order dismissing Count XIV of Plaintiffs' Complaint; and

**WHEREAS**, Defendants filed an Answer to Plaintiffs' Complaint on March 13, 2020 and an Amended Answer on October 29, 2020; and

**WHEREAS**, the Parties have engaged in settlement negotiations for the purpose of resolving the disputed issues between them, and agree that all claims should be resolved amicably and without further protracted, expensive and unnecessary litigation;

**WHEREAS**, Defendants deny all liability for the claims asserted by Plaintiffs; and

**WHEREAS**, the Parties have submitted a fully executed Settlement Agreement for the Court's review; and

**WHEREAS,** the Court has reviewed the Parties' Settlement Agreement and finds it to be fair and reasonable; and

**WHEREAS**, this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 42 U.S.C. § 2000cc-2; and

**WHEREAS**, this Court has personal jurisdiction over Defendants; and

**WHEREAS**, venue is proper in this District;


IT IS on this_____day of_____, 2022, **ORDERED, ADJUDGED and DECREED** as follows:

1.      The terms of the Parties' Settlement Agreement, dated_____, 2022 and attached to this Order, and each of those terms, are hereby incorporated into this Order and are fully enforceable as an Order of this Court.

2.      This Court shall retain jurisdiction in this case for all purposes for the term and as set forth in the Settlement Agreement.

**IT IS SO ORDERED**.


Dated:_____, 2022


_____
Hon. Michael A. Shipp
United States District Judge

# Schedule D

OWNERSHIP OF DOCUMENTS
THIS DOCUMENT AND THE IDEAS AND DESIGNS INCORPORATED HEREIN, AS AN INSTRUMENT OF PROFESSIONAL SERVICE, IS THE PROPERTY OF PROFESSIONAL DESIGN SERVICES, L.L.C., AND IS NOT TO BE USED IN WHOLE OR IN PART FOR ANY OTHER PROJECT WITHOUT THE WRITTEN AUTHORIZATION OF PROFESSIONAL DESIGN SERVICES, L.L.C.

10 0 10 20
SCALE IN FEET

| No. | DATE | DESCRIPTION | BY |
|---|---|---|---|

**PDS**
**PROFESSIONAL DESIGN SERVICES, L.L.C.**
CONSULTING ENGINEERS, LAND SURVEYORS, PLANNERS, ENVIRONMENTAL SCIENTISTS, CONSTRUCTION SERVICES
1245 AIRPORT ROAD, SUITE 1, LAKEWOOD, NEW JERSEY 08701
PHONE 732 363 0060 FAX 732 363 0073
NEW JERSEY STATE BOARD OF P.E. & L.S.
CERTIFICATE OF AUTHORIZATION NO. 24GA28125400

**IAN M BORDEN, PP**
N.J. PROFESSIONAL PLANNER LICENSE #33LI00617400
**WILLIAM A. STEVENS, PE, PP**
PROFESSIONAL ENGINEER, NEW JERSEY LIC. #39915
PROFESSIONAL PLANNER, NEW JERSEY LIC. #5394
**GRAHAM J. MACFARLANE, PE, PP, CME**
PROFESSIONAL ENGINEER, NEW JERSEY LIC. #37110
PROFESSIONAL PLANNER, NEW JERSEY LIC. #6104
**STEVEN METELSKI, JR., PLS**
N.J. PROFESSIONAL LAND SURVEYOR LICENSE #43393

## SAMPLE PLOT PLAN

FOR

JACKSON TRAILS

TOWNSHIP OF JACKSON
OCEAN COUNTY NEW JERSEY

| | | | |
|---|---|---|---|
| SCALE: | 1:10_XREF | JOB NUMBER: | 17286 |
| DRAWN BY: | CR | DATE: | ## |
| DESIGN/CALC'D BY: | GJM | SHEET: 1 | 1 |
| CHECKED BY: | GJM | | |

BILLK 3/3/22
H:\PROJECTS\17286\PLOT PLANS < 17286 SAMPLE PLOT PLAN 2 >

**SCHEDULE E**

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JACKSON TRAILS LLC, a New Jersey limited liability corporation, JACKSON 222324 LLC, a New Jersey limited liability corporation, JACKSON FARMS LLC, a New Jersey limited liability corporation, JACKSON RUN LLC, a New Jersey limited liability corporation, JACKSON WALK LLC, a New Jersey limited liability corporation, and LAKEWOOD INVESTMENTS LLC, a New Jersey limited liability corporation.<br><br>                                        Plaintiffs,<br><br>          v.<br><br>TOWNSHIP OF JACKSON, a New Jersey municipal corporation and body politic and the PLANNING BOARD OF THE TOWNSHIP OF JACKSON, a municipal agency,<br><br>                                        Defendants. | Civ. No. 3:20-cv-01150<br><br>**STIPULATION OF DISMISSAL** |

**PLEASE TAKE NOTICE THAT,** pursuant to Rule 41(a)(I)(A)(ii) of the Federal Rules of Civil Procedure, the parties, by and through their undersigned attorneys, hereby give notice that the above-captioned action is voluntarily dismissed, with prejudice.

Date: _____

_____
Sieglinde K. Rath, Esq. (#048131991)
Storzer & Associates, P.C.
9433 Common Brook Road
Suite 208
Owings Mills, Maryland 21117
rath@storzerlaw.com

*Attorney for Plaintiffs*

_____
Donna M. Jennings, Esq. (#017281995)
Wilentz, Goldman, & Spitzer, PA
90 Woodbridge Center Drive
Suite 900
Woodbridge, New Jersey 07095
djennings@wilentz.com

*Attorney for Plaintiffs*

_____
Brent R. Pohlman, Esq.(#046612005)
Mandelbaum Salsburg P.C.
Suite 105
3 Becker Farm Road
Roseland, NJ 07068
bpohlman@lawfirm.ms

*Attorney for Defendants*

2